ASPINALL'S CLUB LIMITED, Appellant, v ESKANDER ARYEH, Respondent.

Second Department, May 17, 1982

**APPEARANCES OF COUNSEL**

*A. Richard Golub* (*Gary S. Graifman* and *Louis M. Atlas* of counsel), for appellant.

*Sol I. Sokolsky (Frederick R. Ballen* of counsel), for respondent.

*Edward R. Korman, United States Attorney, J. Paul McGrath, Assistant Attorney General (David Epstein* and *James G. Hergen* of counsel), for United States of America, *amicus curiae.*

OPINION OF THE COURT

THOMPSON, J.

In 1967 the United States ratified a convention designed to facilitate the service of process and other documents in civil and commercial disputes among private litigants from different countries. The convention, called the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (in Civil or Commercial Matters) (the Convention), went into effect in 1969. (20 US Treaties & Other Int Agreements 361, TIAS 6638.) Some 20 nations, including the United States and the United Kingdom, have ratified the Convention. Several other countries are signatories but have not yet ratified the Convention.

By its terms, the Convention requires each member State to designate a central authority through which requests for service of legal papers may be channeled. By executive order, the President has designated the Department of Justice (the Department) to be this country's central authority. When the Department receives a request for service in this country, the Department's Office of Foreign Litigation (the OFL) processes the request, assigning a control number, checking the request for its completeness and compliance with the Convention's requirements, and performing other similar administrative functions. The OFL then forwards the foreign request and documents to the United States Marshal (the Marshal) for the area in which the person or entity to be served resides or is located. It is then the Marshal's duty to make or attempt to make service. Special instructions may be given to the Marshal as to the manner of service; otherwise the Marshal is to make service in conformity with rule 4 of the Federal Rules of Civil Procedure, or as otherwise permitted in the jurisdiction in which service is to be made. The request is conveyed to the Marshal on a Federal form, OBD-95. When

service is completed, the Marshal must complete form OBD-95 and return it to the Department, which takes any administrative steps necessary for official records and then transmits the completed form to the central authority of the requesting country. The completed form certifies that process has been served as described thereon. (See the Convention, art 5, subd [a]; Department of Justice Memo No. 386, Rev 3 [July, 1979], to United States Marshals, "Instructions for serving foreign judicial documents in the United States and for processing requests by litigants in this country for service of American judicial documents abroad" [the instructions].) The Department handles approximately 2,000 requests under the Convention each year.

■ The Convention seems to be successful in facilitating international service of process, judging by the relatively small number of cases which have been litigated under its provisions. We are now faced with an important question which appears to be one of first impression: whether service by the Marshal under the Convention and under rule 4 of the Federal Rules of Civil Procedure is sufficient to permit a foreign default judgment to be converted into a New York judgment under CPLR 3213 and otherwise be enforced in the courts of New York. The United States has evidenced its concern with the matter by filing a "Suggestion of Interest of the United States of America", which we treat as a brief *amicus curiae*. We also granted the United States permission to participate in the oral argument of this matter. We hold that service under the Federal Rules is sufficient, and thus reverse the determination of Special Term that service was required to be made in conformance with New York law.

The plaintiff, Aspinall's Club Limited (the Club), is a British corporation licensed by British authorities to conduct gaming activities on its premises in London. Defendant, Eskander Aryeh, a domiciliary of Great Neck, New York, visited the Club on October 13, 1978 and made written application for membership, giving notice of his intent to gamble. His application was accepted the same day, and thus he became entitled to gamble at the Club after the passage of 48 hours.

On December 29 and 31, 1978 and January 1 and 2, 1979, Aryeh gambled at the Club. He gave the Club 12 checks, for a total of 100,500 pounds sterling, written on a bank account in Switzerland. The checks were subsequently dishonored. The Club wrote to Aryeh, but Aryeh did not cover the checks. The Club then brought suit in the High Court of Justice, Queens Bench Division, in England, seeking recovery of the 100,500 pounds.

Pursuant to the provisions of the Convention, the English notice of the writ of summons was transmitted to the Department of Justice. The Department files show receipt on February 15, 1980 of a request for service from the Senior Master of the Supreme Court of Judicature, Royal Courts of Justice, Strand, London, England, the British central authority under the Convention. The Department processed the papers and sent them to the Marshal who served the papers at Aryeh's home on "Mrs. Aryeh (refused to give 1st name), wife" on February 28, 1980. The Marshal returned the completed form OBD-95 to the Department, which returned all appropriate papers to England, certifying to English authorities that service had been made under the Convention.

Rule 4 (subd [d], par [1]) of the Federal Rules of Civil Procedure provides that personal service may be effected upon a person by leaving copies of the documents with "some person of suitable age and discretion" residing at his "dwelling house or usual place of abode". In an affidavit, Aryeh's wife states that she was not served, but that "[i]t appears that a document * * * was left at the premises with a person other than myself". It was undisputed that Aryeh resides at the address where the Marshal served the papers.

Aryeh did not appear or otherwise respond to the Club's English proceeding, so the Club obtained a default judgment on April 2, 1980.

In August, 1980, the Club commenced the instant action by service of a summons and a notice of motion for summary judgment in lieu of a complaint with supporting affidavits, seeking to enter the default judgment for the 100,500 pounds to be converted to United States dollars

and for interest from the date of the default. The Club also sought, in a second cause of action, summary judgment on the documents (the dishonored checks).

Aryeh opposed the motion as to entry of the judgment arguing, *inter alia,* that New York does not enforce foreign default judgments when jurisdiction rests "upon long-arm service of process" and that enforcement of a gambling debt would controvert New York's public policy, citing CPLR 5304 (subd [b], par 4). As to the Club's cause of action on the checks, Aryeh argued that under English law the Club had illegally extended credit when it accepted the checks. Special Term concluded that Aryeh's trips to England and visits to the Club constituted a sufficient basis for an English court to exercise jurisdiction over him. However, Special Term denied the Club's motion for summary judgment on the first cause of action (to enter the English default judgment) and set the matter down for a hearing as to the propriety of service, noting that there had been no proof that a copy of the papers in the original English action had ever been mailed to Aryeh as required by CPLR 308 (subd 2). Special Term concluded that the provisions of the CPLR would determine whether personal jurisdiction had been obtained over Aryeh. Special Term also declined to grant summary judgment on the second cause of action (on the dishonored checks), refusing to resolve the issues presented on conflicting affidavits. Rather, Special Term, pursuant to CPLR 3213, directed that the papers submitted be deemed pleadings and that the second cause of action proceed in its ordinary course.

A hearing was subsequently held at Special Term before a second Judge, who noted that the law of the case was that service was to be examined under the criteria of CPLR 308 and then found that the Club had not made service in the English action in accord with CPLR 308 (subd 2) so that the English court had not obtained personal jurisdiction over Aryeh. The Club appeals from the original order as to service of process, from an order purportedly denying its motion to renew and reargue and from the order following the hearing. (We deem the second order to have granted reargument and to have adhered to the original determination.)

The specific question before us is whether, in order for New York to enter an English default judgment against one of its residents, process must have been served in accord with State law rather than Federal law, when the documents at issue are foreign judicial documents served pursuant to the Convention.

We agree with Special Term that Aryeh's ventures into London gaming circles provided sufficient contacts to justify the English court in asserting personal jurisdiction over Aryeh, provided service was properly made.

Under rule 4 of the Federal Rules of Civil Procedure, a Marshal may make service by a variety of methods. He may, *inter alia,* deliver the papers to his target's residence and leave them with a person of suitable age and discretion. It is undisputed that this was done in the instant case; the only dispute is whether the woman who received the papers was Aryeh's wife or some other woman.

New York's requirements are more stringent. If the papers are to be left at a person's house with someone other than the person himself, the process server must also mail a second set of the papers to the person's "last known residence". Aryeh would have this court impose the more strenuous requirements, thus promoting New York law over the Convention and the Federal rule. New York law would thus supersede Federal law. The very statement of that argument exposes its untenability. It is both elementary and fundamental that the Federal law and treaties are the supreme law of the land (US Const, art VI, cl 2). A "convention" is a treaty for purposes of the supremacy clause of the Constitution. (See, e.g., *American Trust Co. v Smyth,* 247 F2d 149, 153.) The Convention requires each ratifying party to designate a central authority. That central authority is to see that the papers in question are served "by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory" (Convention, art 5, subd [a]). The provisions of the Convention were duly observed in the instant matter. We thus conclude that the service on Aryeh met the standards of rule 4 of the Federal Rules of Civil Procedure and thus satisfied the provisions of the Convention. The Club had no need in these circumstances to meet

the requirements of the CPLR in order to have its default judgment entered in New York.

■ Special Term also determined that New York would enforce the default even though the underlying claim involved gambling debts. We agree. The Court of Appeals, in *Intercontinental Hotels Corp. v Golden* (15 NY2d 9), held that a gambling debt legally incurred in Puerto Rico was enforceable in New York. That decision was made when New York permitted only pari-mutuel betting and bingo; since then, new State-sponsored or supervised games have been approved. Gambling in legalized and appropriately supervised forms is not against this State's public policy. The law is well settled, then, that a debt such as that incurred by Aryeh at the Club may be collected here without infringing on New York's public policy. Summary judgment on the Club's first cause of action should thus be granted and judgment should be entered on the English default judgment.

MANGANO, J. P., Gulotta and BROWN, JJ., concur.

Appeal from an order of the Supreme Court, Nassau County, dated March 3, 1981, dismissed. That order was superseded by a further order of the same court entered August 4, 1981, which, upon reargument, adhered to the original determination.

Order entered August 4, 1981, reversed insofar as appealed from, and summary judgment is granted to plaintiff on its first cause of action.

Appeal from an order of the same court, dated August 20, 1981, dismissed as moot in light of our determination on the appeal from the order entered August 4, 1981.

Plaintiff is awarded one bill of costs payable by defendant.