This appeal involves two issues: (1) Whether service of process by an Israeli court under the provisions of the Hague Convention was sufficient to obtain personal jurisdiction of an Alabama resident, and (2) whether in this suit based on a foreign *Page 22 
judgment, the trial court could, under the provisions of Rule 54(b), A.R.Civ.P., enter a final judgment against the defendant while there was still pending a third-party claim in which the defendant was seeking indemnification from a third party if the defendant was found liable on the main claim.
The trial court entered summary judgment for the plaintiff, Bank Leumi Le-Israel, B.M. (hereinafter "Bank Leumi"), on its complaint seeking enforcement of an Israeli court's judgment entered against the defendant, Frank A. Parsons, on a claim that Parsons, as guarantor of a loan, had not paid the loan. Under the provisions of Rule 54(b), A.R.Civ.P., the trial court certified the summary judgment as a final judgment, even though there was still pending a third-party complaint for indemnification filed by Parsons against a third-party defendant, First Family of Travel Specialists, Ltd. (hereinafter "First Family"), which is not a party to this appeal.
 FACTS
In late 1980, Parsons, an Alabama citizen and a resident of Birmingham, Alabama, became acquainted with Francisco De Araujo, a producer/director of a stage play depicting the last days of Jesus Christ entitled "The Passion Play." Parsons became interested in De Araujo's dream of performing that play in Israel for visiting American tourists. In an effort to secure financing for the project, Parsons, his wife, and the then-pastor of his church formed an Alabama corporation named Passion Play of Jerusalem, Inc. (hereinafter "Passion Play").
On February 9, 1982, while Parsons was in Israel making final plans for the production of the play, he executed a guarantee agreement with Bank Leumi, which had loaned Passion Play $50,000 for its production of the play. Passion Play planned to repay the loan through its sale of advance tickets to American citizens who were planning to travel to Israel. Upon the outbreak of hostility between Israel and Lebanon in mid-1982, a number of Americans who had sent deposits to Passion Play cancelled their reservations and demanded refunds. The refunding of those ticket deposits by Passion Play resulted in its eventual default on its loan with Bank Leumi.
On January 14, 1983, after repeated attempts by Bank Leumi to collect its loan from Passion Play and from Parsons, Bank Leumi filed an action against Passion Play as the principal debtor on its loan, and against Parsons as the guarantor, in the district court of Tel-Aviv-Jeffo, Israel. Passion Play and Parsons were served with process in Birmingham by the bank's attorney under the provisions of Fed.R.Civ.P. 4(c)(2)(A). Passion Play failed to file a responsive pleading in the Israeli action, and the Israeli court entered a default judgment against Passion Play on May 13, 1983, for the sum of $59,641.90 which reflected the principal loan of $50,000 plus $9,641.90 in accrued commissions, interest, and expenses. On August 15, 1984, Bank Leumi received a check for $10,000 from Parsons, and it credited that amount against the judgment. Neither Passion Play nor Parsons made further payments to Bank Leumi. On March 26, 1985, the same Israeli court entered a default judgment against Parsons as the guarantor on the bank loan. Like Passion Play, Parsons had failed to file a responsive pleading, even though he had received service of process in Birmingham.
On August 12, 1986, Bank Leumi filed an action in the Circuit Court of Jefferson County against Passion Play and Parsons. In its complaint, Bank Leumi requested the trial court to recognize and enforce the judgment rendered by the Israeli court. Neither Passion Play nor Parsons filed an answer to the bank's complaint; however, Passion Play and Parsons filed a motion to dismiss the complaint, claiming that the foreign judgments rendered against them were void ab initio because, they argued, the bank had failed to effect service in the manner provided under an applicable Hague Convention agreement.
Later, Bank Leumi filed an amended complaint to delete Passion Play as a party defendant and a motion to dismiss without prejudice Passion Play as a party defendant. On December 17, 1986, the trial *Page 23 
court granted the motion and entered an order dismissing Passion Play as a party defendant.
On February 25, 1987, Parsons filed a third-party complaint for indemnification against First Family, alleging that First Family had agreed to assume "all" the debts of Passion Play, including the loan from Bank Leumi, in exchange for its receiving a controlling interest in Passion Play.
Bank Leumi subsequently filed a motion for summary judgment, and, after an ore tenus hearing, the trial court entered a summary judgment for the bank against Parsons for $121,697.49, the amount of the foreign judgment plus accumulated interest. Parsons subsequently filed an amendment to his third-party complaint against First Family in which he substituted the amount of $121,697.49 as the amount of indemnification sought from First Family.
Bank Leumi filed a motion to make the summary judgment order a final judgment pursuant to Rule 54(b), A.R.Civ.P., over Parsons's objections that the entry of a final judgment would prejudice and harm him in regard to his third-party complaint for indemnification against First Family. The trial court initially denied Bank Leumi's motion to make the summary judgment final, but on rehearing granted it and entered a final judgment against Parsons in the amount of $121,697.49.
 ISSUES
One of the two issues raised by Parsons is whether the Israeli default judgment entered against him was based upon a sufficient service of process that would make the judgment valid and, therefore, subject to recognition and enforcement by an Alabama court. Parsons contends that because Bank Leumi did not provide him with either an English or a French translation of the service of process his procedural due process rights were violated, and, therefore, that the trial court should not have recognized and enforced the foreign default judgment entered against him.
Parsons's second issue is whether his third-party claim for indemnification against First Family is so directly related to, and intertwined with, Bank Leumi's claim against him as guarantor on its loan to Passion Play that the trial court should not have made its summary judgment final pursuant to Rule 54(b).
 RECOGNITION AND ENFORCEMENT OF A FOREIGN COUNTRY'S JUDGMENT
The United States Constitution requires that each state give full faith and credit "to the public acts, records, and judicial proceedings of every other state."[1] However, that provision of the Constitution does not bestow any right, privilege, or immunity in regard to the judgments of courts of foreign countries. Aetna Life Ins Co. v. Tremblay,223 U.S. 185, 190, 32 S.Ct. 309, 310, 56 L.Ed. 398, 399 (1912). Instead, American courts generally hold that their recognition of foreign judgments is governed by the doctrine of comity. SeeHilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95
(1895); Somportex, Ltd. v. Philadelphia Chewing Gum Corp.,453 F.2d 435, 440 (3d Cir. 1971), cert. denied, 405 U.S. 1017,92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); Perrin v. Perrin,408 F.2d 107, 109 (3d Cir. 1969); Yoder v. Yoder, 24 Ohio App.2d 71,263 N.E.2d 913, 914-15 (1970). The United States Supreme Court defined "comity" in 1895 as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Guyot, 159 U.S. at 164, 16 S.Ct. at 143,40 L.Ed. at 108. In the Guyot case, the United States Supreme Court outlined the basic requirements that must be met before an American court will recognize and enforce a judgment rendered in a foreign country:
 "When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, *Page 24 
to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in a foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."
159 U.S. at 205-06, 16 S.Ct. at 159-60, 40 L.Ed. at 123. (Emphasis added.) One of the requirements mentioned by the United States Supreme Court as prerequisites for an American court to recognize and enforce a foreign country's judgment entered against an American citizen is that the citizen must have been given an "opportunity to defend" against the action filed against him in that foreign country's court. Implicit in that requirement is the need to notify an American defendant through acceptable service-of-process methods that a plaintiff has filed an action against him in another country's court. InGriffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635
(1946), the United States Supreme Court stated that a judgment, no matter where entered, would not be given legal effect, even as a matter of comity, if that judgment was obtained in violation of procedural due process.
In order to further protect an American citizen against the entry of a foreign default judgment against him because of a plaintiff's failure to notify him through an acceptable method of service of process, the United States joined 24 other nations, including Israel, at The Hague, Netherlands, to sign the following multilateral agreement: Convention on the ServiceAbroad of Judicial and Extrajudicial Documents in Civil orCommercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163 (entered into force for the United States on February 10, 1969, and hereinafter referred to as the "Hague Convention"). Article 1 of the Hague Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit judicial or extrajudicial documents for service abroad." Because the Hague Convention has been held to have the status of a treaty,[2] under the Supremacy Clause of the United States Constitution, it is the "supreme law of the land."[3] Generally, state courts, like this one, have held that the Hague Convention supersedes state service provisions by virtue of the Supremacy Clause. See Exparte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 882
(Ala. 1983); Dr. Ing. H.C.F. Porsche A.G. v. Superior Court,123 Cal.App.3d 755, 757-58, 177 Cal.Rptr. 155, 156 n. 1 (1981); Kadota v. Hosogai, 125 Ariz. 131, 608 P.2d 68 (Ct.App. 1980); Aspinall's Club Ltd. v. Aryeh, 86 A.D.2d 428,450 N.Y.S.2d 199 (1982).
There are three categories of permissible service of process methods set out in the Hague Convention. Process can be served by (1) the designated "Central Authority" of the receiving nation[4] (the designated Central Authority for the United States is the Justice Department), (2) various non-objectionable methods (i.e., service of process through diplomatic, consular, or postal channels),[5] or (3) any other method permitted by international agreements or the internal law of the receiving nation.[6] *Page 25 
Parsons alleged in his motion to dismiss that he did not receive either an English or a French translation of the summons and complaint filed against him by Bank Leumi in Israel; that that fact constituted a defect in service that violated the Hague Convention; and, therefore, that that defect violated his procedural due process rights guaranteed by the United States Constitution, citing Mullane v. Central HanoverBank Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865
(1950). We cannot accept Parsons's argument.
Parsons's contention that the Hague Convention requires the service of either an English or French translation of the summons and complaint would be correct if Bank Leumi had chosen to effect service or process through the designated Central Authority for the United States — the Justice Department. See Arts. 2, 3, 5, 7, 20 U.S.T. at 362-63. The record indicates that service of process was not made through the Central Authority designated by the United States, but by means of an alternative method of service permitted by the United States. See Art. 19, 20 U.S.T. at 365. In this case, Bank Leumi sought to effect service by mail pursuant to Fed.R.Civ.P.4(c)(2)(C)(ii). However, because it failed to receive acknowledgement of service from Parsons, Bank Leumi effected service upon Parsons through its attorney in Birmingham, Alabama, pursuant to Fed.R.Civ.P. 4(c)(2)(A). See Jugolinija v.Blue Heaven Mills, Inc., 115 F.R.D. 13, 15 (S.D.Ga. 1986). Because service of process upon Parsons was not effected through this nation's designated Central Authority, but through an alternative method of service permitted under the Hague Convention, Bank Leumi was not required to provide him with either an English or a French translation of the summons and complaint served upon him; therefore, Parsons's argument that service of process upon him was ineffective under the Hague Convention is incorrect; we find, as did the trial court, that the procedures used for obtaining service of process complied with the Hague Convention. See Art. 15, 20 U.S.T. at 364.
Finally, it should be noted that despite Parsons's attempt to contest the validity of the Israeli default judgment by asserting errors in law or in facts allegedly committed in the Israeli court proceeding, our judicial duty is not to retry the merits of that case. Our duty, as noted by the United States Supreme Court in Guyot, is only to ascertain whether the American defendant, Parsons, was subjected to such an unfair proceeding by the foreign court that this nation's policy of comity should not allow that judgment to be recognized and enforced through our court system. 159 U.S. at 202-03,16 S.Ct. at 158, 40 L.Ed. at 122. Our review of the record does not indicate that the proceeding conducted against Parsons was unfair; in fact, the record indicates the opposite.
 RULE 54(b) ISSUE
The second issue involves an interpretation of Rule 54(b), A.R.Civ.P. Parsons argues that his third-party claim for indemnification against First Family is so directly related to, and intertwined with, Bank Leumi's claim for recognition and enforcement of its foreign default judgment that the trial court abused its discretion in making the summary judgment for Bank Leumi final pursuant to Rule 54(b).
Rule 54(b), A.R.Civ.P., states:
 "Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . ."
This rule clearly provides that under an appropriate set of facts a trial court may enter a judgment on fewer than all the claims and make that judgment a final judgment. See Donald v.City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92
(1976); Pate v. Merchants Nat. Bank of Mobile, 409 So.2d 797
(1982). *Page 26 
When the issues raised in a complaint containing multiple claims are directly related to, and intertwined with, each other to such a degree that a separate adjudication of one of those claims would pose an unreasonable risk of inconsistent results on the adjudication of the remaining claims, then, of course, the entry of a final judgment as to that claim would be an abuse of discretion by the trial court. See Branch v.SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala. 1987);Gray v. Central Bank of Tuscaloosa, 519 So.2d 477 (Ala. 1987).
The facts surrounding this case clearly show that there is no risk of inconsistent results on Bank Leumi's claim and Parsons's third-party claim for indemnification against First Family.
Parsons's contention that First Family agreed to assume all the debts of Passion Play, including the bank loan, in exchange for First Family's receiving a controlling interest in Passion Play does not in any way affect Bank Leumi's right to have its foreign default judgment against Parsons recognized and enforced. Parsons does not deny that the bank loan was due and unpaid; he merely asserts that First Family was obligated to pay it. The liability of First Family, of course, is still pending in the third-party action, which remains in the trial court.
Because Bank Leumi's claim for recognition and enforcement of its foreign judgment against Parsons is independent andseparate from Parsons's third-party claim for indemnification from First Family, we hold that the trial court did not abuse its discretion in making the summary judgment for Bank Leumi a final judgment pursuant to Rule 54(b).
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] U.S. Const. art. IV, § 1.
[2] Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694,108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).
[3] U.S. Const. Art. VI, Cl. 2.
[4] Arts. 2-6, 13, 20 U.S.T. at 362, 364.
[5] Arts. 8-10, 20 U.S.T. at 363.
[6] Arts. 11, 19, 24-25, 20 U.S.T. at 363-64, 365, 366.