[723 NYS2d 285]

Michael Lenchyshyn et al., Respondents, v Pelko Electric, Inc., et al., Appellants. (Appeal No. 1.)

Fourth Department, March 21, 2001

## APPEARANCES OF COUNSEL

*Cohen Swados Wright Hanifin,* Buffalo (*Larry Kerman* of counsel), for appellants.

*Feuerstein & Smith, L. L. P.,* Buffalo (*Alan R. Feuerstein* of counsel), for respondents.

## OPINION OF THE COURT

KEHOE, J.

Plaintiffs obtained a money judgment against defendants in Ontario, Canada. Thereafter, plaintiffs sought recognition and enforcement of the Ontario judgment in New York, where defendants allegedly have assets. The issue before us is whether a judgment creditor must show a basis for the exercise of personal jurisdiction over a judgment debtor by a New York court before obtaining recognition and enforcement of a foreign country money judgment. We hold that the judgment debtor need not be subject to personal jurisdiction in New York before the judgment creditor may obtain recognition and enforcement of the foreign country money judgment, as neither the Due Process Clause of the United States Constitution nor New York law requires that the New York court have a jurisdictional basis for proceeding against the judgment debtor.

## I

All of the parties are Canadian. Plaintiff Michael Lenchyshyn is a resident of Ontario, Canada, and plaintiff Micro Furnace, Ltd. is chartered under the laws of Ontario. Defendant Kosta Pelonis is a citizen of Canada and resident of Taiwan, and defendant Pelko Electric, Inc. (Pelko Electric), of which Pelonis is president, director and sole shareholder, is an Ontario corporation, although apparently now defunct.

In the Ontario action, plaintiffs interposed counterclaims seeking to recover damages for defendants' alleged infringement of plaintiffs' trademark and patent rights in a certain ceramic disc furnace. Plaintiffs also alleged that defendants breached an agreement to pay royalties to plaintiffs in connection with defendants' distribution of the furnace pursuant to a

license granted by plaintiffs. Defendants participated in the Ontario action fully and to its conclusion, and in fact prosecuted the action as plaintiffs. On March 6, 1990, following a trial, the Supreme Court of Ontario awarded plaintiffs judgment on their counterclaims against defendants for $2,729,056.49 CDN, plus costs in the amount of $339,221.11 CDN, plus postjudgment interest at the rate of 14% per year. Defendants unsuccessfully appealed the judgment to the Court of Appeal of Ontario, and then unsuccessfully moved for leave to appeal to the Supreme Court of Canada. By February 1999 the outstanding judgment, including interest, amounted to $7,361,004 CDN or about $4.7 million US.

Plaintiffs then commenced this action in Erie County, seeking recognition of the Ontario judgment pursuant to CPLR article 53. The action was brought on by notice of motion for summary judgment in lieu of complaint, pursuant to CPLR 3213 and 5303. The motion was supported by the affidavits of plaintiffs' attorney and Lenchyshyn and copies of the Canadian judgment and appellate orders. Plaintiffs asserted that the Canadian court had jurisdiction over defendants and that its judgment was "final and conclusive" and remained unsatisfied. Plaintiffs alleged that they had made "unsuccessful attempts to execute on Defendant[s'] Canadian bank accounts" but that defendants had "transferred their funds" into foreign banks.

Upon commencing the action, plaintiffs were unable to serve defendants pursuant to CPLR 308 (1), (2), or (4). Plaintiffs moved for an order fashioning a method of service pursuant to CPLR 308 (5). By order granted April 21, 1999, Supreme Court allowed plaintiffs to effect service upon defendants by publication and by serving a Buffalo law firm that had represented defendants in certain litigation in the Western District of New York during the mid-1990's.

Following service, defendants moved to dismiss the action for lack of personal jurisdiction. Defendants did not contest the manner of service, but contended that Pelonis was not a resident or domiciliary of New York, that Pelko Electric had ceased operations in 1990, that neither defendant was present in or doing or transacting business in New York, and that New York thus had no basis for assuming personal jurisdiction over defendants.

In opposition, plaintiffs submitted the affidavit of their attorney, who argued that the Canadian judgment met all requirements for recognition in New York. Plaintiffs disputed defendants' assertions of lack of jurisdiction and alleged a

jurisdictional nexus between defendants and New York based on the following: that defendants had transferred funds from Canadian banks into various bank accounts in Buffalo in order to avoid execution on the funds in Ontario; that defendants had used those funds in order to conduct business activities in New York, or business activities elsewhere that had substantial commercial effects in New York; that defendants were distributing a certain product nationwide, including to Wal-Mart stores in New York; that Pelonis had participated in various lawsuits in New York concerning such business matters and had various New York debtors; and that Pelonis was a principal in a newly formed New York corporation, Pelonis USA, Ltd., to which he had purported to license the same patent that had been the subject of the Ontario litigation and, incidentally, of a Federal action brought against defendants by another licensee in the Western District of New York. Plaintiffs submitted various exhibits in an attempt to establish such connections between defendants and New York. Those exhibits included bank records, papers generated in the Federal litigation, and a December 1990 letter addressed to defendants at the office of the corporate defendant in Niagara Falls, New York.

## II

Supreme Court granted an order and judgment (appeal No. 1) and an order (appeal No. 2). The order and judgment denied defendants' motion to dismiss the action for lack of any jurisdictional basis over defendants in New York; granted plaintiffs' motion for summary judgment; ordered that the Ontario judgment be recognized in New York pursuant to CPLR article 53; and authorized plaintiffs to take appropriate steps to enforce the judgment in New York. The order denied defendants' motion to renew their motion to dismiss for lack of jurisdiction. On appeal, defendants raise five contentions, all of which proceed from the premise that a valid basis for the exercise of personal jurisdiction over defendants in New York is a prerequisite to recognition and enforcement of the Ontario money judgment in New York under CPLR article 53.

## III

CPLR article 53 is New York's version of the "Uniform Foreign Country Money-Judgments Recognition Act" (*see,* CPLR 5308, 5309). It codifies common-law principles applicable to recognition of foreign country judgments (*see, Overseas Dev. Bank in Liquidation v Nothmann,* 103 AD2d 534, 538,

*revd on other grounds* 64 NY2d 927; *Porisini v Petricca,* 90 AD2d 949, 949-950) and is a companion to CPLR article 54, which is New York's version of the "Uniform Enforcement of Foreign Judgments Act" (*see,* CPLR 5408). The reference to "foreign judgments" in CPLR article 54 is to those of sister states or other jurisdictions in the United States (*see,* CPLR 5301 [a]; 5401). Article 54 provides a procedure for registering out-of-state judgments that New York is compelled to recognize pursuant to the Full Faith and Credit Clause of the United States Constitution (*see,* CPLR 5401, 5402). CPLR article 53, in contrast, accords recognition to certain foreign country judgments—those directing the payment of money only—as a matter of international comity (*see,* CPLR 5301, 5303). Unlike article 54, article 53 sets forth substantive requirements that must be met before a foreign country money judgment will be recognized in New York (*see,* CPLR 5303, 5304, 5305). Those primarily concern whether the foreign country's court had personal jurisdiction over the judgment debtor and subject matter jurisdiction over the case (*see,* CPLR 5304 [a] [2]; [b] [1]; 5305); whether it was an impartial tribunal utilizing procedures compatible with due process of law (*see,* CPLR 5304 [a] [1]); and whether enforcing the foreign country money judgment would be unfair, work a fraud, or violate New York's public policy (*see,* CPLR 5304 [b] [2]-[7]; *see generally, Islamic Republic of Iran v Pahlavi,* 94 AD2d 374, 378, *affd* 62 NY2d 474, *cert denied* 469 US 1108; *Dunstan v Higgins,* 138 NY 70, 75-76; *Harris S.A. De C.V. v Grupo Sistemas Integrales De Telecomunicacion,* 279 AD2d 263; *Constandinou v Constandinou* [appeal No. 1], 265 AD2d 890; *Aspinall's Club v Aryeh,* 86 AD2d 428, 434). Generally speaking, if the foreign country money judgment meets those conditions, it is "conclusive" and entitled to recognition (CPLR 5302, 5303; *see,* CPLR 5305 [a]; *Overseas Dev. Bank in Liquidation v Nothmann, supra,* at 538-539; *see also, Porisini v Petricca, supra,* at 950; *Citadel Mgt. v Hertzog,* 182 Misc 2d 902, 903-904; *Bridgeway Corp. v Citibank,* 45 F Supp 2d 276, 285-286 [SD NY]; *see generally, Greschler v Greschler,* 51 NY2d 368, 376).

## IV

Defendants have not challenged their amenability to the jurisdiction of the Ontario court or the fundamental fairness of Ontario's system of justice and court procedures, and thus we have no need to address the strict requirements for recognition set forth in CPLR 5304 (a) (1) or (2). Nor have defendants

raised any issue with respect to Supreme Court's discretionary power to refuse recognition of the Ontario money judgment under any of the conditions listed in CPLR 5304 (b). We would conclude, in any event, that the judicial procedures and substantive laws of Ontario, a common-law jurisdiction, comport with due process requirements and with New York's public policy, and as a general matter we of course would accord an Ontario judgment the same recognition as a sister state judgment, albeit as a matter of international comity rather than constitutional imperative (*see,* CPLR 5303, 5402; *see also, Cowans v Ticonderoga Pulp & Paper Co.,* 246 NY 603, *affg on opn at* 219 App Div 120; *Constandinou v Constandinou, supra; Dolec Consultants v Lancer Litho Packaging Corp.,* 245 AD2d 415, 415-416; *see generally, Greschler v Greschler, supra,* at 376; *Feinberg v Feinberg,* 40 NY2d 124, 127-128).

Defendants nonetheless argue that New York may not recognize the Ontario money judgment, and that plaintiffs may not enforce it against defendants in New York, unless defendants have an actual current presence within the State or unless there is some other basis for New York's exercise of personal jurisdiction over defendants. Indeed, defendants contend that Supreme Court erred even in entertaining the CPLR article 53 proceeding because defendants are not currently subject to personal jurisdiction in New York. We conclude, however, that a party seeking recognition in New York of a foreign money judgment (whether of a sister state or a foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts. No such requirement can be found in the CPLR, and none inheres in the Due Process Clause of the United States Constitution, from which jurisdictional basis requirements derive.

The sole authority cited in support of defendants' assertion that a jurisdictional basis is required in the recognizing state (as opposed to in the rendering state or country) is the case of *Biel v Boehm* (94 Misc 2d 946, 948-949 [Sup Ct, Suffolk County]). As support for that proposition, *Biel* (*supra,* at 950-951) cites a footnote in the landmark case of *Shaffer v Heitner* (433 US 186, 210, n 36). In fact, the footnote supports the contrary conclusion. It reads:

"Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, *whether*

*or not that State would have jurisdiction* to determine the existence of the debt as an original matter" (*Shaffer v Heitner, supra,* at 210, n 36 [emphasis supplied]).

Those courts that have cited the *Shaffer* footnote have held uniformly that no jurisdictional basis for proceeding against the judgment debtor need be shown before a foreign judgment will be recognized or enforced in a given state (*see, Breezevale Ltd. v Dickinson,* 262 AD2d 248; *Fine v Spierer,* 109 AD2d 611, 612; *First v State of Montana, Dept. of Social & Rehabilitation Servs.,* 247 Mont 465, 474-475, 808 P2d 467, 472-473; *Bank of Babylon v Quirk,* 192 Conn 447, 450, 472 A2d 21, 22-23; *Huggins v Deinhard,* 134 Ariz 98, 101-103, 654 P2d 32, 35-37; *Williamson v Williamson,* 247 Ga 260, 262-263, 275 SE2d 42, 44-45, *cert denied* 454 US 1097; *Berger v Berger,* 138 Vt 367, 369-370, 417 A2d 921, 922; *Black v Black,* 119 RI 127, 140, 377 A2d 1308, 1315; *Tabet v Tabet,* 644 So 2d 557, 559 [Fla]; *Fraser v Littlejohn,* 96 NC App 377, 379-381, 386 SE2d 230, 232-233; *Ruiz v Lloses,* 233 NJ Super 608, 610-611, 559 A2d 866, 867; *Gingold v Gingold,* 161 Cal App 3d 1177, 1183, 208 Cal Rptr 123, 126; *Hexter v Hexter,* 179 Ind App 638, 639, 386 NE2d 1006, 1007; *Kingsland Holdings v Bracco,* 1996 WL 104257, * 6 [Del Ct of Ch]; *UMS Partners v Jackson,* 1995 WL 413395, * 2-3 [Del Super Ct]; *Sagona v Doty,* 25 Va Cir 529; *cf., State ex rel. Dept. of Revenue v Control Data Corp.,* 300 Ore 471, 475-476, 713 P2d 30, 32; *see generally, Kulko v Superior Ct.,* 436 US 84, 95, n 9 [and accompanying text], *reh denied* 438 US 908). Only one case other than the aforementioned *Biel* decision holds to the contrary, and it does so without referring to the *Shaffer* principle (*see, Mori v Mori,* 896 P2d 1237, 1239-1240 [Utah Ct App], *revd on other grounds* 931 P2d 854 [Utah]). While we recognize that the foregoing cases, like the *Shaffer* footnote, concern the recognition and enforcement of sister state judgments, we conclude that the same principle applies to recognition and enforcement of foreign country money judgments (*see, Mandel-Mantello v Treves,* 79 AD2d 569, *revg* 103 Misc 2d 700; *Rich v Rich,* 93 Misc 2d 409, 411-412; *see also,* CPLR 5101; *cf.,* CPLR 6201 [5]; *contra, Parada Jimenez v Mobil Oil Co. de Venezuela,* 1991 WL 64186, * 2-4, 1991 US Dist LEXIS 4996 [SD NY, Apr. 18, 1991]).

## V

There is no mention in CPLR article 53 of any requirement of personal jurisdiction over the judgment debtor in New York,

a telling omission in our view. The sole reference to personal jurisdiction within CPLR article 53 relates to whether the foreign country's court had personal jurisdiction over the judgment debtor (*see,* CPLR 5304 [a] [2]; [b] [2]; 5305 [a], [b]). Thus, the statutory scheme does not explicitly contemplate a challenge to the New York court's exercise of personal jurisdiction over the judgment debtor in the recognition proceeding itself. Moreover, although the procedure for obtaining recognition of a foreign country money judgment (*see,* CPLR 5303) may differ from that regarding a sister state judgment (*see,* CPLR 5402; *but see,* CPLR 5406), that possible difference in itself does not imply that there are additional jurisdictional requirements to be satisfied in proceedings to obtain recognition of a foreign country money judgment. The possible difference in procedure stems from the fact that the sister state judgment is constitutionally entitled to full faith and credit, whereas the foreign country money judgment is entitled to comity only, and only if it meets the conditions set out in CPLR article 53. The more formal and complex procedure of CPLR article 53 may be necessary in order to allow the judgment debtor to contest whether the mandatory or discretionary conditions of article 53 are met. However, the more intricate procedure of CPLR article 53 should not be viewed as allowing the judgment debtor to raise nonstatutory obstacles to recognition of the foreign country money judgment (*see, Watary Servs. v Law Kin Wah,* 247 AD2d 281, 282).

## VI

Considerations of logic, fairness, and practicality dictate that a judgment creditor be permitted to obtain recognition and enforcement of a foreign country money judgment without any showing that the judgment debtor is subject to personal jurisdiction in New York. In proceeding under article 53, the judgment creditor does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment. Moreover, it is not inevitable or even likely that any enforcement device ultimately employed by the judgment creditor will operate against the judgment debtor in personam. Most devices for the enforcement of money judgments operate in rem against the real or personal property of the judgment debtor, or in personam against third parties, such as banks, investment firms, employers, or other third-party garnishees, obligors or

debtors of the judgment debtor (*see,* CPLR 5201-5203, 5209, 5222, 5225 [b]; 5227, 5230-5232, 5233, 5235, 5236, 5241 [b]; 5242; *compare* CPLR 5101 *with* CPLR 5104; *see generally, Breezevale Ltd. v Dickinson, supra,* at 248).

Moreover, although defendants assert that they currently have no assets in New York, that assertion has no relation to their jurisdictional objection. Besides, if that assertion were true, it would be difficult to understand why defendants have so adamantly opposed the recognition of the Ontario judgment in New York. In any event, plaintiffs sufficiently allege that defendants have assets in New York. In particular, it is alleged that defendants maintain bank accounts in Buffalo and that Pelonis is a principal in a New York corporation (one formed apparently to carry out what formerly had been the business of Pelko Electric). Plaintiffs should be given the opportunity to enforce the Ontario judgment by levying against whatever assets of defendants may be held by New York banks or whatever debts (i.e., salary, commissions or dividends) may be owed to Pelonis by the New York corporation. Such assets and/or debts would have a New York situs, which is all that is required to subject them to levy or restraint here as a means of enforcing the domesticated Ontario judgment (*see generally, Breezevale Ltd. v Dickinson, supra,* at 248; *Fine v Spierer, supra,* at 612; *Mandel-Mantello v Treves, supra*; *Rich v Rich, supra,* at 412). Moreover, even if defendants do not presently have assets in New York, plaintiffs nevertheless should be granted recognition of the foreign country money judgment pursuant to CPLR article 53, and thereby should have the opportunity to pursue all such enforcement steps in futuro, whenever it might appear that defendants are maintaining assets in New York, including at any time during the initial life of the domesticated Ontario money judgment or any subsequent renewal period (*see generally,* CPLR 211 [a]; 5014).

At bottom, defendants take the illogical and inequitable position that a judgment debtor's New York assets should be immune from execution or restraint so long as the judgment debtor absents himself from New York, no difficult trick in this day of telecommuting and banking and investing by telephone or wire or over the Internet. Requiring that the judgment debtor have a "presence" in or some other jurisdictional nexus to the state of enforcement would unduly protect a judgment debtor and enable him easily to escape his just obligations under a foreign country money judgment. For all of the foregoing reasons, we conclude that it is not essential to recognition

and enforcement of a foreign country money judgment that the judgment debtor be subject to the personal jurisdiction of the New York courts.

## VII

Accordingly, the order and judgment in appeal No. 1 and the order in appeal No. 2 should be affirmed.

PIGOTT, JR., P. J., PINE, HURLBUTT and LAWTON, JJ., concur.

Order and judgment unanimously affirmed, with costs.