OPINION OF THE COURT
Charles J. Market, J.
New York, desirous of streamlining litigation for the recognition and enforcement in New York of a money judgment of a foreign country, has emphasized that its courts’ reviewing role in such cases, as discussed below, is simply “ministerial.” The issue of first impression raised by this case is what degree of scrutiny must the New York court employ in reviewing a motion made on default to enforce a foreign money judgment. Alternatively put, the issue is whether this court’s “ministerial function” entails being only a rubber stamp where, although made on default, the motion calling for recognition is made simply on skeletal and conclusory averments, especially concerning personal jurisdiction in the foreign country.
In the present case, plaintiff has moved for summary judgment in lieu of complaint (CPLR 3213) for recognition in New York of a Canadian court’s judgment rendered on December 13, 2002 (see generally, Siegel, NY Prac § 472 [West 3d ed 1999]). The papers state only that “after personal service upon the Defendant,” the court in Canada awarded plaintiff the sum of $15,111.60, plus costs and interest. A copy of the Canadian judgment is attached. The exhibit reveals, although not discussed in the affirmation of plaintiff’s New York attorney, that the judgment by the Queen’s Bench, Province of Saskatchewan, was taken on default.
Plaintiff does not provide a clue as to the nature and facts underlying the Canadian action. More important, no copies of affidavits, exhibits, or explanation are provided as to the alleged “personal service” in Canada. This court is then advised that “Defendant is now out of” Canada and resides in Sunnyside, Queens County. The affidavits of service to the present motion properly show several attempts to have served Gorman of the present motion/action under CPLR 3213 and that, finally, “nail and mail” service was effectuated (see, CPLR 308 [4]).
In international law, the principle of comity is best exemplified by the recognition of the courts of one nation to a judgment *695 rendered by the courts of another country. Such comity promotes international cooperation and ensures that disputes are tried only once (Mark W. Janis, An Introduction to International Law, at 339 [Aspen Pubis 4th ed 2003]). In the reigning precedent, Hilton v Guyot (159 US 113 [1895]), the Supreme Court of the United States defined international comity or the “comity of nations” as “[t]he extent to which the law of one nation . . . shall be allowed to operate within the dominion of another nation” (id. at 163). The Court in Hilton expounded:
“[W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.” (Id. at 202-203.)
Although this area of law “seems ripe for international agreement” (Janis at 340, supra), the United States is not a party to any convention on the recognition and enforcement of foreign judgments (id.; Note, Wimmer Canada, Inc. v. Abele Tractor & Equipment Co., Inc., 16 NY Intl L Rev 197 [2003]). Although such a treaty is now being negotiated at the Hague, it is doubtful that the United States will ratify it (Janis at 340, supra). Though not a party to any treaty or convention regarding the recognition and enforcement of a foreign nation’s money judgment, the United States is one of the over 130 countries that presently are parties to the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the New York Convention (id., citing 21 UST 2517, TIAS No. 6997; Alford, Federal Courts, International Tribunals, and the Continuum of Deference, 43 Va J Intl L 675, 700 [2003]; Note, Forum Non Conveniens and Personal Jurisdiction: Procedural Limitations on the Enforcement of Foreign Arbitral Awards under the New York Convention, 83 BU L Rev 899, 899 n 1 [2003]).
*696 International law scholar Mark W Janis, Professor of Law at the University of Connecticut School of Law, thus observes that the United States is bound by international law to compel foreign arbitration and to recognize and enforce foreign arbitral awards, although no similar compulsion exists, as a general matter, concerning judicial decisions, proceedings, and judgments (Janis at 341, supra).
Helping to fill the void in the law is the Uniform Foreign Money-Judgments Recognition Act, approved in 1962 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association and presently adopted in some form by 31 states and the District of Columbia and the Virgin Islands (see discussion in Zitter, Annotation, Construction and Application of Uniform Foreign Money-Judgments Recognition Act, 88 ALR5th 545, 561 [2001]; Note, 16 NY Intl L Rev 197, supra). The Act serves principally as a “showpiece” since its principal purpose is to make it more likely that judgments rendered in a state that has adopted it will be recognized abroad, since the courts of many foreign countries value reciprocity (Zitter, Annotation, at 561, supra).
New York, in 1970, codified the Act in CPLR article 53 (Note, 16 NY Intl L Rev 197, supra). “In proceeding under article 53, the judgment creditor does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment” (Lenchyshyn v Pelko Elec., 281 AD2d 42, 49 [4th Dept 2001], quoted with approval in CIBC Mellon Trust Co. v Mora Hotel Corp. N.V., 100 NY2d 215, 222 [2003], cert denied — US —, 124 S Ct 399 [2003]).
One way that a conclusive judgment under the Act may be enforceable in New York is by filing a motion for summary judgment in lieu of complaint pursuant to CPLR 3213 (also referred to herein as motion/action).
CPLR 5303 requires the courts to treat the judgment of a foreign nation as conclusive, unless one of the three mandatory grounds in CPLR 5304 (a) or seven discretionary grounds in CPLR 5304 (b) for refusing recognition is applicable (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5303:l). Concerning the enumerated mandatory grounds, CPLR 5304 (a) states that New York will not recognize the foreign country’s money judgment where the originating forum did not provide for impartial forums (see, e.g., Bridgeway *697 Corp. v Citibank, 45 F Supp 2d 276 [SD NY 1999]), did not provide procedures that are compatible with due process, or did not have personal jurisdiction over the defendant. CPLR 5304 (b) then provides several discretionary grounds for not recognizing a judgment of a foreign nation.*
In Lenchyshyn v Pelko Elec. (281 AD2d 42 [2001], supra), containing a scholarly analysis, the plaintiff, as in the case at bar, sought to enforce a Canadian judgment in New York. The court there concluded that jurisdiction of the defendant in New York was not essential as long as the foreign court had all requisite jurisdiction and did not violate traditional American concepts of due process (281 AD2d at 46-47; see, Siegel, 2001 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5305:l, 2003 Pocket Part, at 68-69).
CPLR article 53 poses interesting issues concerning the allocation of the respective burdens of production and proof in an action to recognize and enforce a foreign money judgment. The United States Court of Appeals for the Second Circuit, in Ackermann v Levine (788 F2d 830 [1986]), construing CPLR article 53, stated that a plaintiff has the “prima facie” burden of establishing (1) a final judgment, (2) subject matter jurisdiction, (3) jurisdiction over the parties or res, and (4) regular proceedings conducted under an impartial system of justice (id. at 842 n 12; accord, CIBC Mellon Trust Co. v Mora Hotel Corp. N.V., 296 AD2d 81, 97-98 [1st Dept 2002], affd 100 NY2d 530 [2003], cert denied — US —, 124 S Ct 399 [2003], supra; Note, 16 NY Intl L Rev 197, supra). A Federal District Court, construing New York law, has held that the plaintiff judgment creditor has the prima facie burden of demonstrating that no mandatory basis for refusal exists under CPLR 5304 (a), and that the defendant judgment debtor opposing enforcement has the burden of showing a discretionary basis for nonrecognition under the seven categories listed in CPLR 5304 (b) (see, Bridgeway Corp., 45 F Supp 2d at 286; accord S.C. Chimexim S.A. v Velco Enters. Ltd., 36 F Supp 2d 206 [SD NY, Mar. 16, 1999]).
*698 In Lenchyshyn, a contested case for recognition of the foreign judgment — unlike the default in the case at bar — the Appellate Division, Fourth Department, stated:
“Defendants have not challenged their amenability to the jurisdiction of the Ontario court or the fundamental fairness of Ontario’s system of justice and court procedures, and thus we have no need to address the strict requirements for recognition set forth in CPLR 5304 (a) (1) or (2). Nor have defendants raised any issue with respect to Supreme Court’s discretionary power to refuse recognition of the Ontario money judgment under any of the conditions listed in CPLR 5304 (b).” (Id. at 46-47; see generally, Kam-Tech Sys., Ltd. v Yardeni, 340 NJ Super 414, 774 A2d 644 [2001].)
This case involves a motion in New York, taken on default, to recognize and enforce a Canadian judgment, also taken on default. This court’s legal research, however, has not found any case discussing the degree of scrutiny that a New York court must exercise in reviewing whether the plaintiff judgment creditor has met its prima facie burden in enforcing a foreign court’s money judgment, where the motion/action in New York is taken on default.
This court is not troubled by the first two mandatory requirements listed in CPLR 5304 (a) (1), because it cannot be seriously contended that the courts of Canada do not provide for impartial tribunals and do not have procedures akin to concepts of due process of law. New York courts have enforced judgments of Canadian courts without questioning their impartiality and fairness (see, e.g., Wimmer Can. v Abele Tractor & Equip. Co., 299 AD2d 47 [3d Dept 2002], lv denied 99 NY2d 507 [2003]). Our courts have recognized the Canadian judicial system as “a sister common law jurisdiction with procedures akin to our own” (Clarkson Co., Ltd. v Shaheen, 544 F2d 624, 630 [2d Cir 1976], quoted in Wimmer Can., 299 AD2d at 49). References to American actions where a plaintiff has sought to enforce a Canadian judgment may be found in Zitter (Annotation, 88 ALR5th at 549).
This court is also willing to excuse the lack of any discussion of the underlying facts leading to the Canadian judgment in the supporting affirmation to the CPLR 3213 motion/action, although a brief factual overview — as a matter of professional advocacy — would have been preferable and appropriate.
*699 CPLR 3213 requires that a certified copy of the judgment be attached. In Shaw v Krebs (85 AD2d 913, 914 [4th Dept 1981]), the Court required a certified copy of the judgment, not simply a certified copy of the minutes. In the present case, although the certification was made by a notary public of the Province of Saskatchewan, not by a court official, this court will deem that the certification of the judgment is proper.
This court is, however, hesitant to grant the instant motion/ action because of the lack of minimum proof on the third mandatory requirement, posited in CPLR 5304 (a) (2), on whether the foreign court had “personal jurisdiction over the defendant.” In the present case, the motion papers contain only the conclusory and hearsay statement by plaintiffs New York attorney concerning the “personal service” upon Gorman in Canada, without any elaboration or supporting proof.
In Lenchyshyn (281 AD2d at 46-47), the Fourth Department, as quoted above, stated that it had no occasion to review “the strict requirements for recognition” set forth in CPLR 5304 (a), because they were not challenged by the defendant judgment-debtor in that case. Lenchyshyn, however, as noted, was not a case of a default in the New York enforcement proceeding on the foreign court’s money judgment, unlike the circumstances here.
Several analogous precedents result in this court’s conclusion that in a motion/action to recognize and enforce a foreign court’s money judgment, taken on default, the proponent of the motion must satisfy the reviewing court of the jurisdictional basis in the foreign country by something more than a conclusory statement that “personal service and jurisdiction” was obtained. First, in Dominican Sisters of Ontario v Dunn (272 AD2d 367, 367 [2d Dept 2000]), the Appellate Division held that plaintiff made a proper prima facie showing that jurisdiction in the underlying Oregon state court action had been properly obtained, since “[t]he process server’s affidavit, which indicated that the defendant was personally served, constituted prima facie evidence of proper service under Oregon law.” In Desilets v Desilets (262 AD2d 482, 483 [2d Dept 1999]), similarly, the Appellate Division concluded that the mother, by her testimony, made a prima facie case of proper service of process in the originating Florida action. These cases accord with the proposition that presentation of a process server’s affidavit constitutes a prima fade case of personal jurisdiction (see, Rox Riv 83 Partners v Ettinger, 276 AD2d 782, 783 [2d Dept 2000]; Wieck v Halpern, 255 *700 AD2d 438 [2d Dept 1998]; Remington Invs. v Seiden, 240 AD2d 647 [2d Dept 1997]).
Third, the Appellate Division, Third Department, in Wimmer Can. v Abele Tractor & Equip. Co. (299 AD2d at 49), in affirming the enforcement in New York of a Canadian judgment, stated: “As the proponent, plaintiff bears the burden of making a prima facie showing that the mandatory grounds for nonrecognition — i.e., due process and personal jurisdiction — do not exist.” This statement suggests that, like this court’s duty on any motion taken on default, it has a responsibility to make sure a party seeking any relief from a court has made out a prima facie case.
Plaintiff, in the present case, by its conclusory assertion of personal jurisdiction over Gorman in the Canadian proceeding, without any discussion, does not meet its burden. Plaintiff’s counsel has failed to state whether Gorman was a citizen or resident of Canada at the time or was served with the papers in that action, despite the conclusory assertion that she had been personally served. Plaintiff’s counsel fails to provide a description of the method of service on Gorman in Canada, her residency and citizenship, and her ties to Canada and the cause of action (see, e.g., Wimmer Can., 299 AD2d at 51 [reciting that defendant, a New York corporation, was served process in the Canadian action at its Albany County offices]; Aspinalls Club v Aryeh, 86 AD2d 428 [2d Dept 1982] [reciting that defendant was served pursuant to rule 4 of the Federal Rules of Civil Procedure and Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (in Civil or Commercial Matters), 20 UST 361, TIAS No. 6638]). No exhibits are attached regarding the service and no explanation or exhibits are provided on whether the method of service employed in Canada comported with Canadian law (see, e.g., Dominican Sisters of Ontario v Dunn, 272 AD2d at 367) or other accepted methods of service.
New York certainly has a self-interest in being a “generous forum in which to enforce judgments for money damages rendered by foreign courts” (CIBC Mellon Trust Co. v Mora Hotel Corp., 100 NY2d at 221; accord, Siegel, NY Prac § 472, supra; Note, 16 NY Intl L Rev 197, supra). New York courts would like the courts of foreign nations to be receptive to our money judgments. However, even generosity has its limits. If this court were to grant the present motion/action, without demanding more essential facts regarding the personal service *701 of Gorman in Canada, this court’s “ministerial function” (Lenchyshyn, 281 AD2d at 49) would be further reduced into being a mere rubber stamp. Enforcing the judgment in the present case, without demanding more facts, would simply encourage a procession of similar, assembly line, cookie-cutter motions/ actions under CPLR 3213.
Professor David D. Siegel illuminates the issue:
“If it were just a matter of recording the judgment — as is permissible for sister-state judgments under Article 54 of the CPLR — the state might welcome the procession, collecting a full fee for nothing more than opening a file on the case. But a foreign judgment gets no such smooth entry. The procedure for converting the foreign judgment into a New York judgment is either a plenary action or at least the motion/action of CPLR 3213. Either requires an application to the court and the attention of a judge, a process that costs the state a good deal more them the fees it collects from the plaintiff.” (Siegel, 2001 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5305:l, 2003 Pocket Part, at 69.)
To permit the plaintiff to prevail on the present record, without a modicum of facts that equate to making a prima facie case, even on a motion where the defendant has defaulted, would essentially make this court into a simple recording agent for the foreign country’s money judgment, contrary to the intended separation between CPLR articles 53 and 54.
Especially because the instant motion will determine the extent to which the Canadian judgment will have conclusive effect in New York, this court cannot permit a movant to be cavalier in addressing the minimum requirements under CPLR 5304 (a). As stated by the court in Clarkson Co., Ltd. v Shaheen (544 F2d at 633), in another context, “strict adherence to the Rules is better practice and may avoid serious problems in another case.” Every defendant judgment debtor has a right to have the vital issue of personal jurisdiction proved to the court’s satisfaction, even where the motion is made on default, and proof of personal jurisdiction in the foreign jurisdiction should be readily apparent. In this case, it is not.
Plaintiff’s motion for summary judgment pursuant to CPLR 3213, made on default, accordingly, is denied without preju *702 dice, with leave to renew upon papers that provide a prima facie case of personal or proper jurisdiction in Canada, including exhibits and an explanation regarding Canadian law on the type of service employed.

 The discretionary grounds for nonrecognition, listed in CPLR 5304 (b), are: the foreign court lacked subject matter jurisdiction; the defendant did not receive sufficient advance notice to provide a defense in the foreign action; the foreign judgment was obtained by fraud; the cause of action on which the foreign judgment is based is “repugnant” to New York’s public policy; the judgment conflicts with another final, conclusive judgment; the foreign court proceeding ran contrary to an agreement calling for any dispute to be settled or adjudicated by some other means; in the case of jurisdiction based only on personal service, the foreign country was “a seriously inconvenient forum” for the trial of the action.