OPINION OF THE COURT
Thomas F. Whelan, J.
Ordered that this unopposed motion by plaintiff for sum *711 mary judgment in lieu of complaint is granted to the extent that plaintiff is awarded judgment against defendant in the sum of $5,160; and it is further ordered that the remaining requests for counsel fees and interest are set down for an inquest to be held on June 21, 2001, at 9:30 a.m. in Part 33, at the courthouse located at 235 Griffing Avenue, Riverhead, New York 11901.
This matter, involving a gambling obligation incurred at the Foxwoods Resort Casino in Connecticut, appears to be a case of first impression in our courts. The Court is asked to enforce a gambling contract. Ordinarily, such obligations are unenforceable at common law and, by statute, are void and illegal in our state. However, since these gambling debts were validly contracted in a sovereign Indian Nation, pursuant to a Tribal-State Compact governing the conduct of gaming activities, New York courts are bound to enforce the collection of such debts.
Plaintiff, Mashantucket Pequot Gaming Enterprise, doing business as Foxwoods Resort Casino, located in the State of Connecticut, is owned and operated by the Mashantucket Pequot Tribe, a sovereign Indian Nation. It is a federally recognized Indian tribe (25 USC § 1758 [a]), which exercises sovereign rights pursuant to its constitution and by-laws. It operates the Foxwoods Resort Casino in accordance with the provisions of the Indian Gaming Regulatory Act (hereinafter IGRA) (25 USC § 2701 et seq.) and Tribal law. These laws permit casino gaming, known as class III gaming, pursuant to a Tribal-State Compact (see, 25 USC § 2710 [d]; 56 Fed Reg 24996 [1991]).
On or about September 16, 1994, defendant, a resident of Centereach, New York, applied for a $5,000 line of credit, which was extended to her. On or about December 13, 1995, defendant exercised her right to use the line of credit. At the time defendant applied for the line of credit, she was informed that any obligation incurred by her may be enforced in the Mashantucket Pequot Tribal Court (hereinafter Tribal Court). Since defendant’s signature appears on the credit application, she thus consented to the Tribal Court’s jurisdiction.
In exchange for receiving the line of credit, defendant signed two separate “markers” drawn on European American Bank in Centereach, New York. One “marker” was for $3,000 and the second “marker” was for $2,000. Upon presentation to the bank, the “markers” were returned to plaintiff for insufficient funds. During the next ensuing four years, plaintiff corresponded with defendant attempting to collect on defendant’s obligation. Defendant did not respond.
*712 On May 12, 2000, plaintiff filed a complaint against defendant with the Tribal Court, pursuant to the “Tribe” debt collection laws. Defendant neither appeared before the Tribal Court nor answered the complaint. On or about September 1, 2000, the Tribal Court entered a default judgment against defendant. On May 31, 2000, plaintiff commenced the instant action consisting of a single cause of action. Defendant was served pursuant to CPLR 308 (2) and she neither appeared nor answered in said action. Plaintiff now seeks a default judgment against defendant pursuant to CPLR 3215 for the payment of money damages incurred as a result of the gambling debt.
Gambling in the State of New York is unlawful (see, General Obligations Law § 5-401). Therefore, such a debt under New York law would be unenforceable. However, when a debt instrument is issued as the result of a gaming debt, the courts of the State of New York will look to the laws of the jurisdiction where the debt was incurred to determine the validity and enforceability of such debt (see, Aspinall’s Club v Aryeh, 86 AD2d 428 [2d Dept 1982]; Intercontinental Hotels Corp. v Golden, 15 NY2d 9 [1964]). A gambling debt will not be enforced in New York unless it was validly contracted in another jurisdiction and is enforceable there (see, National Recovery Sys. v Mazzei, 123 Misc 2d 780 [Sup Ct, Suffolk County 1984]).
Title 52 of the General Statutes of Connecticut is similar to New York’s General Obligations Law § 5-401 in that wagering contracts are void. Pursuant to Connecticut General Statutes Annotated § 52-553, a contract to extend credit for gambling purposes is unenforceable.
However, in 1988, the United States Congress passed IGRA, which provides Indian Nations, i.e., plaintiff, the statutory basis to operate gaming activities on tribal land (see, 25 USC § 2710 [d] [7] [B] [vii]). Since Connecticut was found to be a state that regulates, rather than prohibits, gambling in general and games of chances in particular, the conducting of class III gaming activities on the reservation is permissible under IGRA (see, Mashantucket Pequot Tribe v Connecticut, 737 F Supp 169 [D Conn 1990], affd 913 F2d 1024 [2d Cir 1990]).
Connecticut courts have examined the applicable Tribal-State Compact and have noted its detailed provisions covering the extension of credit and collection practices. Courts have concluded that judgments obtained in the Tribal Court are entitled to be enforced by the courts of Connecticut under the *713 principle of comity (see, Mashantucket Pequot Gaming Enter. v DiMasi, 1999 WL 799526,1999 Conn Super LEXIS 2584 [Conn Super Ct, Sept. 23, 1999]) and that the Tribal-State Compact preempts the state law against the extension of credit for gambling (see, Mashantucket Pequot Gaming Enter. v Kennedy, 2000 WL 327243, 2000 Conn Super LEXIS 679 [Conn Super Ct, Mar. 14, 2000]).
Here, the Tribal-State Compact provides a state-sanctioned exception for an extension of credit for gaming purposes at the Foxwoods Resort Casino and Connecticut General Statutes Annotated § 52-553 cannot bar enforcement of any resulting debt incurred.
Therefore, unlike the gambling obligations incurred at a casino in Aruba in National Recovery Sys. v Zemnovitch (250 AD2d 742 [2d Dept 1998]), there has been a sufficient showing of enforceability of this particular gambling debt in Connecticut. The Court is cognizant of the holding in Intercontinental Hotels (supra) that “injustice would result if citizens of this State were allowed to retain the benefits of the winnings in a State where such gambling is legal, but to renege if they were losers” (id., at 15).
Accordingly, the motion is granted.