SEETRANSPORT WIKING TRADER SCHIFFAHRTSGESELLSCHAFT MBH & CO., KOMMANDITGESELLSCHAFT, Plaintiff–Appellee,

v.

NAVIMPEX CENTRALA NAVALA and Uzinexportimport, Defendants–Appellants.

No. 1599, Docket 93–9344.

United States Court of Appeals, Second Circuit.

Argued May 12, 1994.

Decided July 8, 1994.

L. Kevin Sheridan, Smithtown, NY (Radu Herescu, New York City, on the brief), for defendants-appellants.

William J. Brady, III, New York City (Poles, Tublin, Patestides & Stratakis, on the brief), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, JACOBS and LEVAL, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal concerns the enforceability under New York Law of a ruling by a French court made with respect to a French arbitration award. Under the New York Uniform Foreign Money–Judgments Recognition Act, which is Article 53 of the Civil Practice Law and Rules, see N.Y.Civ.Prac.L. & R. 5301–09

(McKinney 1978), New York law permits enforcement of a "foreign country judgment which is final, conclusive and enforceable where rendered...." N.Y.Civ.Prac.L. & R. 5302 (McKinney 1978). The precise issue in this case is whether a ruling of the Paris Court of Appeals conferring "*exequatur*" upon an arbitration award is within the category of judgments comprehended by Article 53. The issue arises on an appeal by two Romanian companies, Navimpex Centrala Navala ("Navimpex") and Uzinexportimport, from a judgment of the District Court for the Southern District of New York (Charles L. Brieant, Judge) awarding Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft ("Seetransport") the sums awarded by an arbitration panel in France. *Seetransport Wiking Trader Schiffa[h]rt[s]gesellschaft MBH & Co. v. Navimpex Centrala Navala,* 837 F.Supp. 79 (S.D.N.Y.1993).[1]

On an earlier appeal, we held that Seetransport's action to enforce the arbitral award under the Convention on the Recognition and Enforcement of Arbitral Awards (the "Convention"), opened for signature June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *reprinted in* 9 U.S.C.A. § 201 note (Supp. 1994), was time-barred. *See Seetransport Wiking Trader · Schiffa[hr]tsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 989 F.2d 572, 581 (2d Cir.1993) ("*Seetransport I* "). The pending appeal presents Seetransport's alternative action to enforce the ruling of the Paris Court of Appeals as a foreign judgment recognized under New York law. We affirm.

## Background

We set forth the background only briefly as it is more fully developed in our decision in the earlier appeal. *See Seetransport I,* 989 F.2d at 574–76. Seetransport is a German corporation which owns and operates ships. Navimpex was a Romanian government trading company engaged in the business of shipbuilding. In 1980, Navimpex contracted to build four ships for Seetransport, but disputes arose and the ships were never built. The parties arbitrated their disputes before the Court of Arbitration of the International Chamber of Commerce in Paris. On March 26, 1984, the arbitral tribunal rendered an award in favor of Seetransport, ordering Navimpex to pay six million deutsche marks, plus interest at the rate of eight percent per year from January 1, 1981. The award also required Navimpex to pay Seetransport $72,000 as reimbursement for Navimpex's unpaid share of the cost of the arbitration. Navimpex sought to annul the award in the Court of Appeals in Paris, but the Court dismissed the application on March 4, 1986.

By the time that Seetransport sued Navimpex in the United States in 1988 to collect on the arbitral award, the statute of limitations to enforce an award under the Convention had run.[2] This was our holding in the prior appeal, in which we reversed a grant of summary judgment in favor of Seetransport on its action to enforce the arbitral award under the Convention. *See Seetransport I,* 989 F.2d at 581. However, Seetransport had sued not only to enforce the arbitral award, but also to enforce, under New York's Article 53, what it believed to be a French judgment confirming the award. We accordingly remanded to the District Court to consider whether Seetransport could succeed on its New York cause of action. We directed the Court to allow the parties to supplement the record on the issue of "whether the decision of the Court of Appeals of Paris is enforceable in France and thus should be enforced by the district court." *Id.* at 583. After accepting supplemental affidavits on this issue, the District Court ruled that the Paris Court of Appeals' dismissal of Navimpex's application had conferred *exequatur* on the award, making it enforceable in France. It

---

1. It appears that Seetransport's full name has been spelled variously throughout these proceedings. This opinion uses the German spelling "Schiffahrtsgesellschaft," which has been translated as "shipping company." *See* Peter Terrell *et al., Collins German–English English–German Dictionary* 571 (1981).

2. Also by the time Seetransport sued, Romania had dissolved Navimpex, transferring all of its assets and liabilities to Uzinexportimport, which has been joined as a party in this case.

then reinstated the judgment in favor of Seetransport that the District Court had originally granted before the prior appeal. Navimpex and Uzinexportimport appeal.

### Discussion

■ Appellants first challenge the District Court's assertion of subject matter jurisdiction over the action to enforce a foreign judgment. As instrumentalities of the Romanian state, Navimpex and Uzinexportimport are entitled to foreign sovereign immunity unless one of the exceptions to immunity, such as waiver, applies. We have already ruled on the earlier appeal that there is jurisdiction. We held that, by signing the Convention and proceeding to arbitration, Romania waived its immunity to an action to enforce a foreign money judgment under Article 53. *See Seetransport I,* 989 F.2d at 582–83. Appellants attempt to distinguish our earlier ruling by arguing that the instant action does not involve an attempt to enforce a foreign money judgment, but rather a foreign arbitral award. Because, as we explain later, we believe that New York would recognize a French decree conferring *exequatur* on an arbitral award as the functional equivalent of a foreign money judgment, appellants' jurisdictional challenge is squarely foreclosed by our earlier opinion. *See United States v. Salerno,* 932 F.2d 117, 121 (2d Cir.1991) (discussing law of the case doctrine).

The central dispute on this appeal is over the significance of the decision of the Paris Court of Appeals dismissing Navimpex's application to annul the award. According to Seetransport, this dismissal conferred *exequatur* on the award. Seetransport further contends that the decree conferring *exequatur* constituted a French judgment awarding the sums specified in the award. New York will enforce a foreign decree under Article 53 only if that decree is a "foreign country judgment which is final, conclusive and enforceable where rendered...." N.Y.Civ. Prac.L. & R. 5302 (McKinney 1978). Appellants contend that even if the Paris Court of Appeals' ruling conferred *exequatur* on the arbitral award, that action did not create a French "judgment." Thus, appellants rea-

son, there is no foreign country judgment that can be enforced under Article 53.

■ Because questions of foreign law are treated as questions of law under Fed. R.Civ.P. 44.1, we subject the District Court's determinations on the foreign law issues to *de novo* review.

Preliminarily, we agree with the District Court that the Court of Appeals' decision conferred *exequatur* on the arbitral award. Article 1490 of the French New Code of Civil Procedure provides that "[r]ejection of an appeal or a motion to set aside confers *exequatur* on the arbitral award, or on such of its dispositions as are not censored by the Court of Appeal." This provision applies to international arbitrations by operation of Article 1507 of the French code. Seetransport's French law expert, Judge Simone Rozes, who retired in 1988 from her position as the Chief Judge of the *Cour de Cassation,* the highest judicial tribunal in France, testified through her affidavits that the Court of Appeals' rejection of Navimpex's challenge to the award conferred *exequatur.* She cited two cases in which French Courts of Appeals concluded that declaring *exequatur* on an arbitral award at the request of a successful party to an arbitration was unnecessary because the earlier rejection of a challenge to the award by the losing party had automatically conferred *exequatur* by operation of Article 1490.

■ The issue is whether the ruling conferring *exequatur* merely made the arbitration award enforceable or was itself an enforceable judgment within the meaning of Article 53. We agree with the District Court that, for purposes of Article 53, the decree conferring *exequatur* on the award was the functional equivalent of a French judgment awarding the sums specified in the award. French courts use the device of *exequatur* to make a decision of an outside tribunal enforceable in France. The New York Court of Appeals has offered the following understanding of the device: "[I]n France an exequatur is regarded as nothing more than an execution of a judgment rendered in a foreign jurisdiction." *In re James' Will,* 248

N.Y. 1, 4–5, 161 N.E. 201, 202 (1928).[3] A legal dictionary provides a similar definition:

*Exequatur:* Let it be executed.

.        .        .        .        .

In French practice, this term is subscribed by judicial authority upon a transcript of a judgment from a foreign country, or from another part of France, and *authorizes the execution of the judgment* within the jurisdiction where it is so indorsed.

Black's Law Dictionary 513 (5th ed. 1979) (emphasis added). *Exequatur* thus seems to presuppose the existence of a "judgment" that can be rendered executable. However, while we do not believe that New York would recognize the arbitral award-without-*exequatur* as a judgment in and of itself,[4] we think that it would recognize as a judgment the decree that confers *exequatur* on the arbitral award. New York is "relatively generous" in recognizing foreign judgments. *See Porisini v. Petricca,* 90 A.D.2d 949, 456 N.Y.S.2d 888, 889 (App.Div.1982). In *Fotochrome, Inc. v. Copal Co.,* 517 F.2d 512 (2d Cir.1975), we considered whether an arbitral award rendered in Japan was enforceable as a foreign judgment under Article 53 on the ground that Japanese law treated arbitral awards as having the same effect as judgments. We held that the arbitral award could not be deemed a Japanese judgment because there had been no opportunity to challenge the award under the few grounds set forth in the Convention: "Since under our procedure the losing party may object to confirmation on limited grounds that are specified in the Convention, we cannot treat the Japanese arbitral award as equivalent to a final judgment barring such recourse by the losing party

when enforcement is sought." *Id.* at 519. By contrast, the process of obtaining *exequatur* in France allows the losing party in an arbitration to challenge the award on the bases enumerated in the Convention. Indeed, Navimpex did challenge the award on Convention grounds before the Paris Court of Appeals. Thus, the policy consideration that motivated our decision in *Fotochrome* to refuse to treat the arbitral award as a foreign judgment does not apply here. Instead, the instant case is closer to *Island Territory of Curacao v. Solitron Devices, Inc.,* 489 F.2d 1313 (2d Cir.1973), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974), in which we enforced as a foreign judgment a foreign court decree confirming an arbitral award. There a Curacaoan court had issued a "writ of execution" on an arbitral award issued in that territory and the losing party in the arbitration had failed to exercise its right to challenge the award on grounds akin to those available in the United States under 9 U.S.C. § 10 (which in turn presents grounds similar to those available under the Convention). *See Island Territory of Curacao v. Solitron Devices, Inc.,* 356 F.Supp. 1, 10 (S.D.N.Y. 1973). Because the losing party had failed to challenge the award in Curacaoan courts, we held that the local court's issuance of a writ of execution had confirmed the award and functioned as a final judgment under Curacaoan law. Likewise, Navimpex's unsuccessful challenge to the award in the French courts made the award-with-*exequatur* enforceable under French law, and the decree accomplishing that result is to be regarded as a judgment enforceable under Article 53.

■ Appellants also challenge the District Court's imposition of prejudgment interest. The Court had the power to grant post-

3. Though *In re James' Will* did not decide whether a French *exequatur* created a French judgment, then-Chief Judge Cardozo, in dissent, referred to the French decree as a "French judgment." *In re James' Will,* 248 N.Y. at 9, 161 N.E. at 203.

4. Professor David Siegel, however, suggests that there may be some situations where the arbitral award can be enforced without any judicial intervention:

The statute does not expressly require that the judgment be shown to be that of a court, although courts are referred to elsewhere in the article. There is room to include such equivalent tribunals as an arbitral panel and an administrative-type agency, if their determinations otherwise satisfy the criteria set forth in Article 53. It may be that the determination emerges from such a foreign tribunal with the same status there as a judicial judgment has, and without having to be converted into such a judgment. If that is so, it should not be indispensable that such a conversion occur before New York recognizes the judgment.

N.Y.Civ.Prac.L. & R. 5301 at 487–88 (McKinney 1978) (practice commentary).

award, prejudgment interest. *See Waterside Ocean Navigation Co. v. International Navigation Ltd.,* 737 F.2d 150, 153–54 (2d Cir. 1984). While appellants claim that they were denied an opportunity to contest the awarding of prejudgment interest, they present no arguments on appeal to demonstrate that the interest was improperly awarded.

Finally, appellants argue that the District Court erred in reinstating the judgment originally entered in favor of Seetransport. When we remanded this case, we directed the District Court to dismiss the cause of action for enforcement of the arbitral award. Appellants believe that the District Court evaded our mandate by reinstating the judgment that had previously been entered on the dismissed cause of action. We find no such error. Because the relief based on the successful cause of action and that based on the dismissed cause of action are identical, reinstating the earlier judgment works no harm on appellants.

The judgment of the District Court is affirmed.