**OCEAN WAREHOUSING B.V.,
presently known as Henry
Bath B.V., Plaintiff,**

**v.**

**BARON METALS AND ALLOYS, INC.,
Marco International (HK), Ltd., and
Marco International Corp. d/b/a Baron Metals and Alloys, Inc. and d/b/a
Marco International (HK), Ltd., Defendants.**

**No. 01 CIV. 621 SAS.**

United States District Court,
S.D. New York.

May 29, 2001.

James L. Ross, Lawrence J. Kahn, Freehill Hogan & Mahar, LLP, New York City, for Plaintiff.

Mark D. Zuckerman, Fischer and Burstein, P.C., Great Neck, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Ocean Warehousing B.V. has filed this action against Baron Metals and Alloys, Inc. ("Baron"), Marco International (HK), Ltd. ("Marco"), and Marco International Corp. ("Marco Corp.") d/b/a Baron Metals and Alloys, Inc. and d/b/a Marco International (HK), Ltd., seeking entry of a Dutch arbitral award as a judgment of the United States pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 201 *et seq.* On February 13, 2001, this Court signed an ex parte order of attachment against Baron and Marco in the amount of $110,000.00, pursuant to Federal Rule of Civil Procedure 64 and Articles 62 and 53 of the New York Civil Practice Law and Rules ("C.P.L.R."). Pending before this Court are plaintiff's motion to confirm the order of attachment pursuant to N.Y. C.P.L.R. § 6211(b) (McKinney 1980), and defendants' cross-motion to vacate the order of attachment pursuant to N.Y. C.P.L.R. § 6223 (McKinney 1980).[1] For the reasons stated below, plaintiff's motion is granted and defendants' cross-motion is denied.

## I.  BACKGROUND

Ocean Warehousing, presently known as Henry Bath B.V., is a Netherlands corporation involved in customs clearance and forwarding of goods shipped in international commerce. *See* 4/25/01 Declaration of James Ross ("Ross Decl."), attorney for plaintiff, ¶ 2. Baron is a New York corporation, and Marco is a Hong Kong corporation with a place of business in New York. *See* Amended Verified Complaint ("Am. Compl.") ¶¶ 5, 6. Both Baron and Marco are involved in the international import and export of metal products. *See id.* ¶ 3.

---

**1.**  Notwithstanding the title of plaintiff's memorandum of law—"Plaintiff's Memorandum of Law in Support of Motion to Convert the Dutch Judgment to a U.S. Judgment or to Alternatively Convert the Dutch Arbitral Award to a U.S. Judgment, and to Confirm the Order of Attachment and to Oppose Defendants' Cross–Motion to Vacate Attachment"—plaintiff's notice of motion only seeks to confirm the order of attachment. It is too early in these proceedings to decide a motion to convert either the Dutch arbitral award or the Dutch judgment to a United States judgment.

Marco Corp. is a New York corporation and is alleged to be the alter ego of Baron and Marco. *See id.* ¶ 18.

Since 1995, plaintiff has acted as defendants' forwarding agent in the Netherlands and has performed various services including customs clearance of goods transported by sea to the Netherlands. *See id.* ¶ 8. The parties never signed a contract dictating the terms of their agreement. *See* 5/2/01 Affidavit of Michael Barenholtz, an officer of Baron, ¶ 5; 5/2/01 Affidavit of Alan Kestenbaum, an officer of Marco, ¶ 5. However, the parties often exchanged written communications. Each written communication from plaintiff to defendants—including price quotes, invoices, and plaintiff's request for a limited power of attorney—contained at the bottom of the page boilerplate language advising that plaintiff's services as a forwarding agent "shall always be governed by the latest version of the . . . Dutch Forwarding Conditions . . . including the arbitration clauses included therein." [2] Exs. 1–6 to Ross Decl. This boilerplate was printed in both Dutch and English.

A dispute arose concerning defendants' refusal to pay plaintiff for funds Ocean Warehousing expended after the Dutch government altered its import tax laws with respect to magnesium shipments. *See* Ross Decl. ¶¶ 15–16. In May 1999, Ocean Warehousing commenced an arbitration proceeding in the Netherlands pursuant to the Dutch Forwarding Conditions. *See id.* ¶ 17. Although they received adequate notice of the arbitration proceeding, defendants never appeared in that forum.[3] *See id.* ¶ 18. A default judgment was entered against defendants in the amount of $136,324.89. *See* Am. Compl. ¶¶ 14, 15. On November 7, 2000, plaintiff filed a petition to the President of the District Court of Rotterdam, seeking to confirm the arbitration award as an enforceable judgment. *See id.* ¶ 16. On November 9, 2000, the arbitral award was confirmed as a Dutch judgment, which under Dutch law is final, conclusive and enforceable in the Netherlands. *See id.* ¶ 17. Although this judgment is subject to appeal, no appeal has been filed. *See id.*

## II. DISCUSSION

### A. Applicable Law

Section 6211(b) of the C.P.L.R. requires that ex parte orders of attachment be confirmed within certain time limits. Such proceedings are governed by section 6223(b) of the C.P.L.R. which provides that: "Upon a motion to vacate or modify an order of attachment the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that [it] will succeed on the merits." N.Y. C.P.L.R. § 6223(b). Defendants only chal-

---

**2.** Article 23 of the Dutch Forwarding Conditions mandates that disputes between forwarders and their principals be decided by arbitration. *See* Dutch Forwarding Conditions, Ex. 1 to Declaration of Dirk Knottenbelt, counsel to plaintiff in the Dutch Arbitration, ¶ 1 ("All disputes which may arise between the forwarder and the other party shall be decided by three arbitrators to the exclusion of the ordinary courts of law, and their decision shall be final. A dispute shall exist whenever any of the parties declares this to be so.").

**3.** Although defendants asserted in their Answer that they received insufficient notice of the arbitration proceedings, *see* Verified Answer and Counterclaim ¶ 31, they have not pursued that defense in their motion to vacate the order of attachment and have not provided any evidence to support that defense. Accordingly, for the purposes of this motion, it is assumed that defendants received adequate notice of the arbitration proceedings.

lenge plaintiff's ability to demonstrate a likelihood of success on the merits.

■ To determine the probability that plaintiff will succeed on the merits, a court must analyze whether the attachment is permitted under the relevant state statute. Article 62 of the C.P.L.R. authorizes attachment, *inter alia,* when "the cause of action is based ... on a judgment which qualifies for recognition under the provisions of article 53." N.Y. C.P.L.R. § 6201(4). Article 53, in turn, provides for the recognition and enforcement by a New York court of foreign money judgments.[4] *See* N.Y. C.P.L.R. § 5301 *et seq.* "Under New York law, ... a foreign-country judgment that is final, conclusive and enforceable where rendered *must* be recognized and will be enforced as 'conclusive between the parties to the extent that it grants or denies recovery of a sum of money.'" *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India,* 809 F.2d 195, 204 (2d Cir.1987) (emphasis added) (quoting N.Y. C.P.L.R. § 5303). "Indeed, New York has a 'long-standing' tradition of 'permitting the enforcement of foreign country money judgments.'" *Bridgeway Corp. v. Citibank,* 45 F.Supp.2d 276, 285 (S.D.N.Y. 1999) (quoting *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.,* 470 F.Supp. 610, 615 (S.D.N.Y. 1979)).

New York law, however, recognizes mandatory grounds for the non-recognition of a foreign judgment: (1) "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law"; or (2) "the foreign court did not have personal jurisdiction over the defendant." N.Y. C.P.L.R.

§ 5304(a). Similarly, a foreign country judgment "need not be recognized" if:

1. the foreign court did not have jurisdiction over the subject matter;

2. the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable [it] to defend;

3. the judgment was obtained by fraud;

4. the cause of action on which the judgment is based is repugnant to the public policy of this state;

5. the judgment conflicts with another final and conclusive judgment;

6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

7. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

N.Y. C.P.L.R. § 5304(b).

### B. Defendants' Argument for Non–Recognition of the Dutch Judgment

■ Defendants have not raised any of the defenses enumerated in section 5304 as a ground for refusing to recognize the Dutch judgment, and thus as a ground for vacating the order of attachment. Rather, defendants argue that the Dutch judgment is not enforceable and final under Article 53 because Dutch law does not provide defendants the opportunity to raise defenses enumerated under the Convention on Foreign Arbitral Awards in the Dutch proceeding confirming the arbitral award as a

---

**4.** Article 53, the Uniform Foreign Country Money–Judgments Recognition Act, was principally a codification of New York common law, which already favored the enforcement of foreign money judgments. *See Island Territory of Curacao v. Solitron Devices, Inc.,* 489 F.2d 1313, 1318 n. 6 (2d Cir.1973).

Dutch judgment. *See* Defendants' Memorandum of Law in Opposition to Motion to Confirm and in Support of Cross–Motion to Vacate Order of Attachment ("Def. Mem.") at 5. Through the affidavit of their Dutch law expert, Lodewijk W.H. van Dijk, defendants contend that had they appeared in the Dutch proceeding confirming the Dutch arbitral award as a Dutch judgment, Dutch law would not have recognized their defense that the arbitration agreement is not valid under the Convention because it is not an "agreement in writing".[5] *See id.* at 6. According to defendants' expert, Dutch law allows a party to be compelled to arbitrate even if that party had not executed a written arbitration agreement. *See* 4/3/01 Affidavit of Lodewijk W.H. van Dijk ¶¶ 7, 8.

■ Defendants' argument confuses the applicability of Convention defenses to Article 53 proceedings. A court's decision whether to recognize and enforce a foreign arbitral award is governed by federal law—specifically, the Convention. A court may refuse recognition of a foreign arbitral award only on the limited grounds enumerated in Article V of the Convention. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 712–13 (2d Cir. 1987) (holding that "the Convention preempts state law and leaves the entire subject of enforcement of foreign arbitration awards governed by its [the Convention's] terms"); *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 518 (2d Cir.1975) ("For-

eign [arbitral] awards are vulnerable to attack only on the grounds expressed in other articles of the Convention, particularly Article V."). By contrast, a New York court's decision whether to recognize a foreign judgment is governed only by Article 53 and the principles of comity.[6] *See Victrix Steamship*, 825 F.2d at 713; *Bridgeway*, 45 F.Supp.2d at 285. This is true even where the foreign judgment is based on a foreign arbitral award. *See Victrix Steamship*, 825 F.2d at 713 n. 2 ("Federal law pertinent to the Convention is inapplicable because the Convention does not apply to the enforcement of judgments that confirm foreign arbitration awards."). The Convention defenses simply do not apply to an Article 53 proceeding seeking recognition and enforcement of a foreign judgment, even if that judgment was based on a foreign arbitral award. *See Island Territory of Curacao*, 489 F.2d at 1318 ("The Convention . . . in no way purports to prevent states from enforcing foreign money judgments, whether those judgments are rendered in the enforcement of an arbitration award or otherwise."). Indeed, to hold that a foreign judgment is not valid if the defendant was unable to raise the Convention defenses in the foreign proceeding confirming a domestic arbitral award would make no sense because the Convention only applies to the recognition and enforcement of non-domestic arbitral awards. *See* Convention,

---

**5.** Under Article II(1) of the Convention, "[e]ach Contracting State shall recognize an *agreement in writing* under which the parties undertake to submit to arbitration all or any differences which have arisen . . . ." An "agreement in writing", in turn, is defined in Article II(2) of the Convention to "include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."

**6.** The doctrine of comity was best explained in the seminal case of *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895):

> "Comity" . . . is the recognition which one nation allows within its territory to the . . . judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

Article I(1).[7]

Defendants cite two cases in support of their contention that a foreign judgment based on a domestic arbitral award is invalid if a defendant did not have the opportunity in the foreign forum to raise defenses enumerated in the Convention. *See* Def. Mem. at 5–6 (citing *Fotochrome,* 517 F.2d at 519, and *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 29 F.3d 79 (2d Cir.1994)). Neither case stands for that proposition. In *Fotochrome,* a Japanese creditor filed a claim in a chapter XI bankruptcy proceeding in New York based on a foreign arbitral award rendered in Japan. The Second Circuit refused to recognize the Japanese arbitral award as a final judgment under the Bankruptcy Act even though Japanese law gave an arbitral award the same effect as a judgment which is final and conclusive between the parties. *See* 517 F.2d at 519. The court stated that "an arbitral award cannot be considered a 'judgment' within the terms of the [Bankruptcy Act], for the process of procuring a judgment based on an arbitral award involves the due process right to contest the award on the limited statutory grounds permitted." *Id.* at 517. To accept the arbitral award as a self-executing judgment in the United States would bar the losing party from the defenses permitted under the Convention. *See id.* at 519.

Unlike *Fotochrome,* defendants here were permitted to contest the arbitral award prior to its confirmation as a judgment in the Netherlands, but they chose not to appear. Further, defendants will have the opportunity to raise the Convention defenses when this Court determines whether to recognize the foreign arbitral award as a United States judgment.[8] *See* 5/15/01 Transcript of Oral Argument at 18. However, at this stage of the proceedings, where the attachment must either be confirmed or vacated, the Convention defenses are irrelevant. Indeed, in *Fotochrome,* the Second Circuit recognized that "if the arbitral award actually results in a judgment in the foreign country, it may be enforced as a foreign money judgment in the State of New York, regardless of the limiting provisions of the Convention and subject only to the non-enforcement provisions of Article 53 of the New York C.P.L.R." 517 F.2d at 518 (citation omitted).

In addition, although a cursory reading of *Seetransport* appears to support defendants' argument, a closer reading of the case suggests otherwise. There, the Second Circuit held that a French decree conferring *exequatur* on an arbitral award is an enforceable judgment under Article 53 because

> the process of obtaining *exequatur* in France allows the losing party in an arbitration to challenge the award on the bases enumerated in the Convention. Indeed, [the defendant] did challenge the award on Convention grounds before

---

**7.** Article I(1) of the Convention states:
This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

**8.** However, because the Second Circuit has long recognized that a court may convert either a foreign arbitral award or a foreign judgment to a United States judgment, *see Island Territory of Curacao,* 489 F.2d at 1323, there is some doubt that the Court will ever reach the merits of defendants' Convention defenses.

the Paris Court of Appeals. Thus, the policy consideration that motivated our decision in *Fotochrome* to refuse to treat the arbitral award as a foreign judgment does not apply here.

29 F.3d at 82. Defendants maintain that this language suggests that a foreign judgment is only enforceable under Article 53 where the foreign proceeding afforded the losing party the opportunity to raise the Convention defenses. *See* Def. Mem. at 5–6.

*Seetransport* stands for no such proposition. In that case, plaintiff, a German corporation, and defendant, a Romanian government trading company, arbitrated their dispute before the Court of Arbitration of the International Chamber of Commerce in Paris. The arbitral tribunal rendered an award in plaintiff's favor. The defendant then sought to annul the award in the Paris Court of Appeals. Defendant's application was rejected, thus conferring *exequatur* on the arbitral award. *See Seetransport,* 29 F.3d at 80. Importantly, because the arbitration was between two non-French parties, French law viewed the arbitration proceeding as being a "non-domestic" proceeding to which the Convention defenses apply. *See Domke on Commercial Arbitration* § 11.09, at 143 (Prac. Guide 1987) ("France also considers an arbitration proceeding in France between foreign parties as being a 'non-domestic' proceeding under Article I of the . . . Convention.") (citation omitted).[9] This explains why the Paris Court of Appeals conferred *exequatur* on the arbitral award, a process reserved for a French court's review of a decision of an *outside* tribunal. *See Seetransport,* 29 F.3d at 81 ("French courts use the device of *exequatur* to make

a decision of an outside tribunal enforceable in France."); *Black's Law Dictionary* 513 (5th ed. 1979) ("In French practice, [exequatur] is subscribed by judicial authority upon a transcript of a judgment from a foreign country, or from another part of France, and authorizes the execution of the judgment within the jurisdiction where it is so indorsed."). Therefore, *Seetransport* stands only for the limited proposition that the Convention defenses may be raised in an enforcement proceeding in New York when there was no opportunity to raise Convention defenses in a foreign proceeding confirming a "non-domestic" arbitral award—a proposition that is not relevant here because the Dutch judgment confirmed a Dutch arbitral award.

This case is closer to *Island Territory of Curacao,* where the Second Circuit enforced as a foreign judgment a foreign court decree confirming an arbitral award. *See* 489 F.2d at 1323. In that case, the defendant did not participate either in the arbitration proceeding in Curacao or in the Curacaon judicial proceeding confirming the arbitral award. *See id.* at 1314. The Court of Appeals enforced the foreign judgment despite defendant's objections to the manner by which the arbitrators awarded damages, which the Second Circuit admitted might differ from the manner by which an American court or panel of arbitrators would ascertain damages. The Second Circuit stated:

> Any objections to this method of computing damages or to the assumptions made by the arbitrators could have been presented to them or, indeed, might well have been presented in judicial proceedings which could have been brought by [defendant] to annul the arbitration award in Curacao. They come too late

---

9. This circuit applies the same rule. In *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 932 (2d Cir.1983), the Second Circuit held that where a dispute is between two foreign entities an arbitral award rendered in the United States would be enforced in the United States under the Convention.

here, however .... [Defendant] points to no New York statutory law that adopts a policy contrary to that agreed to by the parties here in their contract and implemented by the arbitrators.

*Id.* at 1321.

Likewise, the defendants here failed to appear both in the Dutch arbitral proceeding and the Dutch proceeding confirming the arbitral award to a Dutch judgment. That judgment is enforceable under Article 53 unless defendants demonstrate that an exception enumerated in section 5304 is applicable. Defendants, however, have not shown that any of those defenses are applicable. Therefore, plaintiff has satisfied its burden of demonstrating a likelihood of success that it has an enforceable judgment against Baron and Marco.

## III. CONCLUSION

For the reasons stated above, plaintiff's motion to confirm the order of attachment is granted. Defendants' motion to vacate the order of attachment is denied. A conference is scheduled for June 18, 2001 at 4:30 p.m.

SO ORDERED.