**DARDANA LIMITED, Petitioner–Appellant,**

v.

**A.O. YUGANSKNEFTEGAZ and YUKOS OIL COMPANY,**
**Respondents–Appellees.**

**Docket No. 01–9177.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 20, 2002.

Decided: Jan. 15, 2003.

Supplemental Briefs Received: Sept. 26, 2002.

Ivan F. Blejec, Share & Blejec LLP, New York, NY, for Petitioner–Appellant.

Irwin Rochman, Rochman, Platzer, Fallick & Sternheim, New York, NY, for Respondents–Appellees.

Jamie B.W. Stecher, Tannenbaum, Helpern, Syracuse & Hirschtritt LLP, New York, NY, for Respondents–Appellees.

Before: FEINBERG, STRAUB and MAGILL,* Circuit Judges.

FEINBERG, Circuit Judge.

Petitioner Dardana Limited (Dardana) appeals from an order entered in the United States District Court for the Southern District of New York (Deborah A. Batts, J.), dismissing its petition to confirm two foreign arbitral awards against respondents A.O. Yuganskneftegaz (YNG) and Yukos Oil Company (Yukos) under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention). Respondent YNG did not appear in the proceedings in the district court. Respondent Yukos did, however, and moved under Fed.R.Civ.P. 12(b) to dismiss Dardana's petition against it. The district court dismissed the petition against Yukos for lack of personal jurisdiction, finding that Dardana failed to establish minimum contacts between Yukos and the State of New York. At the same time and for the same reason, the court dismissed sua sponte the petition against YNG.

Dardana's principal arguments on appeal are (1) respondents consented to jurisdiction by virtue of language in the agreement to arbitrate; (2) Dardana alleged a prima facie case of personal jurisdiction over respondents, under either N.Y. C.P.L.R. 301 or Fed.R.Civ.P. 4(k)(2); and (3) property of respondents in the jurisdiction is a sufficient basis to enforce a foreign arbitral award. For reasons set forth below, we vacate the order and remand for discovery and findings by the district court.

## I.  Background

Petitioner Dardana, a Cayman Islands corporation, is the assignee of two awards rendered by a Swedish arbitral tribunal against respondents YNG and Yukos for breach of contract. The contract at issue was executed in January 1995 between Western Atlas International Inc. (Western Atlas) and YNG. Western Atlas is a Delaware corporation operating principally in Houston, Texas. YNG is an open joint stock company organized under Russian law and a subsidiary of Yukos.[1] Under the 1995 contract, Western Atlas agreed to provide technical services to assist YNG in developing its oil and gas prospects in Siberia. In 1996, with YNG's consent, Western Atlas assigned the contract to its subsidiary PetroAlliance Services Co. (PetroAlliance), a limited liability company registered in Cyprus with a business address in Houston, Texas. A dispute thereafter arose over nonpayment for PetroAlliance's services. In December 1997, PetroAlliance submitted its claim to arbitration in accordance with the contract. The contract provides that any dispute would be submitted for arbitration in Stockholm under the Arbitration Rules of the Stockholm Chamber of Commerce, and that Swedish law governs the contract in the event of a dispute.

In the arbitration proceedings, PetroAlliance sought to recover from YNG as well as from YNG's parent company Yukos on the ground that Yukos had assumed the contract. YNG participated in the pro-

* The Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**1.**  Yukos is one of the largest oil companies in Russia. According to the company's general counsel, Yukos was owned by the Russian state until 1996 and is now a privately owned holding company.

ceedings but Yukos did not.[2] Upon YNG's objection to consolidation of the two claims, the Swedish arbitral panel conducted the arbitrations separately. In its first decision in May 1999, the panel found YNG in breach of its contractual obligations. It awarded PetroAlliance over $6 million in damages plus over $3 million in interest as of June 1998 and interest at the rate of 2% per month thereafter.[3] In March 2000, the same panel concluded that Yukos had assumed the contract, including the obligation to arbitrate, under Swedish law. It found that "YNG had no independent administration or control of its payments for services performed by PetroAlliance but was in financial terms . . . run by and controlled by Yukos" and that Yukos had "held itself out" as the contract party to PetroAlliance. The panel thus held Yukos jointly and severally liable with YNG for PetroAlliance's damages. YNG and Yukos each sought in Sweden to set aside the arbitral award rendered against it.[4] In February 2000, the District Court of Stockholm rejected YNG's challenge to the arbitration and upheld the award.[5] Yukos's appeal is still pending before the Stockholm court, but its request for an "inhibition" to suspend enforcement of the arbitral award was denied in June 2000.

Meanwhile, Dardana ultimately succeeded to PetroAlliance's interest in the two arbitral awards, and it sought to confirm and enforce the awards in a number of forums.[6] In June 2000, Dardana filed the instant petition to confirm the arbitral awards pursuant to the Convention, codified in Chapter Two of the Federal Arbitration Act (FAA) at 9 U.S.C. §§ 201–208. Dardana also moved by order to show cause for entry and enforcement of a final judgment under the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules, apparently including the New York Uniform Foreign Money–Judgments Recognition Act (Article 53), or any applicable federal or state statute. To that end, it requested an order allowing prejudgment discovery and attachment of assets.

In its papers, Dardana alleged that YNG and Yukos had consented, or waived objection, to the jurisdiction of the district court by virtue of the contract. Dardana also argued that respondents "have had significant business dealings with the United States and New York based companies on a continuing and systemic basis for some years making it likely, if not highly proba-

---

2. This was just the opposite of what occurred in the district court proceedings that are the subject of this appeal.

3. At the time the instant petition to confirm the arbitration awards was filed, the total amount due was $12,858,471.87. The total as of March 2002 was over $15 million.

4. Under the arbitral rules of the Stockholm Chamber of Commerce, "[w]hen rendered an Award is final and binding for the parties." Apparently, a party may seek to set aside an award in the Swedish courts on specific enumerated grounds.

5. The decision of the Stockholm District Court was certified as giving the arbitral award legal force. It is unclear, however,

whether the arbitral award against YNG can be enforced as a judgment under Swedish law or New York law. As explained below, this issue is remanded to the district court.

6. In or about June 2000, Dardana brought a proceeding similar to this one in the United Kingdom, which was stayed at Dardana's request pending the outcome of Yukos's appeal in Sweden. In July 2002, Dardana also brought actions in Texas to confirm the award against Yukos and to garnish a payment owing from ExxonMobil Corp. to Yukos. The petition to confirm the award was recently dismissed for lack of personal jurisdiction over Yukos, and the garnishment action was remanded to the state courts. See *Dardana Ltd. v. Yukos Oil Co.*, Civ. No. H–02–2517, at 34 (S.D.Tex. Aug. 6, 2002).

ble, that there are significant assets and/or information about the location of assets in this jurisdiction." [7]

In October 2000, Yukos moved to dismiss Dardana's petition under Fed. R.Civ.P. 12(b)(6) for failure to state a claim on the basis that it was not a party to the contract and under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Yukos also moved in the alternative for a stay of these proceedings pursuant to Article VI of the Convention. As already noted, YNG did not appear before the district court, and Yukos took "no position on whether that award [against YNG] should be confirmed." [8]

The parties submitted affidavits and documentary evidence on Yukos's motion. Most of the submissions dealt with whether Yukos was a party to the contract and thus subject to the arbitral award under Swedish or Russian law. With regard to the issue of personal jurisdiction, Yukos submitted a brief statement that it has "no continuous, permanent or substantial activity in New York," and that it did not maintain an office or employees or own real property in New York. Dardana responded that Yukos's conclusory statement had not answered Dardana's specific allegations, including that Yukos had consented to jurisdiction through the contract, was conducting and soliciting business in New York and the United States through its agents, employed investment banks and other companies, planned to issue American Depository Receipts to trade its securities in the United States, concluded contracts with business entities in New York, and conducted petroleum transactions and maintained bank accounts and other credit facilities in New York and the United States. The district court did not order discovery or hold an evidentiary hearing or argument on any of these issues.

In a Memorandum and Order filed in September 2001, the district court addressed only Yukos's motion to dismiss for lack of personal jurisdiction. The district court concluded that although the Convention conferred federal subject matter jurisdiction over Dardana's petition to confirm the Swedish arbitral awards, it did not confer personal jurisdiction over respondents. The court thus looked to the state long arm statute, N.Y. C.P.L.R. 301, to determine whether general jurisdiction could be asserted over the appearing respondent Yukos.[9] After reviewing Yukos's alleged contacts with New York, the court concluded that, even if those contacts existed, Dardana failed to make a prima facie showing of jurisdiction. Accordingly, the court dismissed the complaint against Yukos. Then, explaining that "even in the absence of a motion from [YNG], the court must conduct an independent analysis of

---

7. Dardana relied largely on print media reports of respondents' business activities, but also cited an order of the district court for the Eastern District of New York attaching bank accounts against another subsidiary of Yukos. See *Bateman Projects Ltd. v. OAO Tomskneft VNK and Yukos Oil Corp.*, 99 CV 2001 (1993). In that case, Yukos and its subsidiary OAO were held to have waived their objections to personal jurisdiction by participating in the proceedings.

8. On appeal, however, counsel for Yukos appeared on behalf of itself and YNG, its subsidiary.

9. Section 301 confers jurisdiction over a defendant when it "is engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.1990) (internal quotation marks and brackets omitted). Where such a showing is made, a defendant "may be sued in New York on causes of action wholly unrelated to acts done in New York." *Id.*

its jurisdiction over [YNG]," the court found that the contacts between YNG and New York were even more tenuous and sua sponte dismissed the petition against YNG for lack of personal jurisdiction. This appeal followed.

## II. Discussion

In this court, Dardana challenges the district court's ruling regarding the sufficiency of respondents' alleged contacts with New York. Dardana also argues that it should have been permitted to proceed, even if the district court were correct in its jurisdictional analysis, on grounds that the court did not address. Dardana contends that (1) respondents contractually consented, or waived objection, to jurisdiction in a court of Dardana's choosing; and (2) respondents' nationwide contacts, grouped together, are sufficient to confer general jurisdiction over respondents under Fed. R.Civ.P. 4(k)(2). Dardana argues that the district court should have ordered discovery on these issues. In addition, Dardana challenges the applicability of a traditional "minimum contacts" analysis in the context of an action to enforce arbitral awards, arguing that respondents' property alone can supply the jurisdictional basis.

In support of these arguments, Dardana stresses the strong public policy favoring arbitration. We emphasized only a few years ago the goals of the Convention and pointed out that "[t]he adoption of the Convention by the United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context." *Smith/Enron Cogeneration L.P., Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir.1999), cert. denied, 531 U.S. 815, 121 S.Ct. 51, 148 L.Ed.2d 20 (2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 638–40, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Respondents Yu-

kos and YNG argue and the district court held, however, that personal jurisdiction must be established under the Constitution and that the Convention does not provide an independent basis for personal jurisdiction.

This Court has not expressly ruled on the question of whether a party seeking to enforce a foreign arbitral award under the Convention must establish a basis for exercising personal jurisdiction over the other party, or the property of that party, against whom enforcement is sought. The question is a difficult one, and has been the subject of recent decisions in two circuit courts. See *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1128 (9th Cir.2002) ("[T]he Convention and the FAA authorize the exercise of subject matter jurisdiction but not personal jurisdiction. Personal jurisdiction must be based on a defendant's person or property."); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212–13 (4th Cir.) (requiring petitioner to establish personal jurisdiction and finding that "the presence of property alone will not support jurisdiction"), cert. denied, —— U.S. ——, 123 S.Ct. 101, 154 L.Ed.2d 30 (2002); see also *Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 622 F.Supp. 25, 27 (S.D.N.Y.1985) (Leval, J.) ("Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power."); *CME Media Enterprises B.V. v. Zelezny*, 2001 WL 1035138, 2001 U.S. Dist. LEXIS 13888 (S.D.N.Y. 2001) (Chin, J.) (confirming an arbitral award on the basis of quasi in rem jurisdiction to the extent of respondent's assets).

It may not be necessary to reach this difficult issue in this case as Dardana has

suggested several alternative theories of jurisdiction. The record before us, however, is incomplete and the decision of the district court does not address several significant issues. For example, Dardana claims that respondents consented to the jurisdiction of the district court. The arbitration clause of the contract at issue states in part:

> Judgment on an award may [sic] entered in *any court having appropriate jurisdiction,* or application may be made to that court for a judicial acceptance of the award and an order of enforcement, as the Party seeking to enforce that award may elect. *The Parties waive any defense of sovereign immunity or similar defense . . . .* In the event that a dispute arises, this Contract shall be governed by the laws of Sweden. (Emphasis added).

Dardana argues that in the context of an international commercial contract designating Sweden, a signatory to the Convention, as the place of arbitration, the phrase "any court having appropriate jurisdiction" means any court that has subject matter jurisdiction to enforce the Convention. It also argues that waiver of "any defense of sovereign immunity or similar defense" includes the defense of lack of personal jurisdiction. The district court apparently rejected Dardana's claim of consent, but without explanation.

Dardana also offers Rule 4(k)(2) as a basis for jurisdiction in the district court. That Rule provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Under this provision, a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole, when the defendant is not subject to personal jurisdiction in any state. Rule 4(k)(2) confers personal jurisdiction over a defendant so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment. See 4 Wright & Miller, Federal Practice and Procedure § 1068.1, at 612, 616 (2002); see also *Chew v. Dietrich,* 143 F.3d 24, 27–28 (2d Cir.), cert. denied, 525 U.S. 948, 119 S.Ct. 373, 142 L.Ed.2d 308 (1998). The district court did not address this claim of jurisdiction through respondents' nationwide contacts.

Finally, Dardana also claims that property alone can supply the jurisdictional basis in an action to enforce an arbitral award. Dardana argues that a foreign arbitral award should be treated the same as a money judgment obtained in a foreign state or country.[10] Dardana contends that a losing party subject to a final arbitral award is a debtor and that a prevailing arbitral party should be permitted to obtain recognition of the award and its enforcement anywhere it reasonably believes that the debtor has assets. Dardana relies

---

**10.** For example, Dardana on appeal cites *Lenchyshyn v. Pelko Electric, Inc.,* 281 A.D.2d 42, 723 N.Y.S.2d 285, 291 (4th Dep't 2001), which held that a foreign country money judgment can be enforced "without any showing that the judgment debtor is subject to personal jurisdiction in New York" under Article 53. The Lenchyshyn court reasoned that "[r]equiring that the judgment debtor have a 'presence' in or some other jurisdictional nexus to the state of enforcement, would unduly protect a judgment debtor and enable him easily to escape his just obligations under a foreign country money judgment." *Id.* at 291–92.

on the reasoning of *Shaffer v. Heitner*, 433 U.S. 186, 210 & n. 36, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), for the proposition that as a constitutional matter, an action on an arbitral award requires only the presence of property in the jurisdiction. During oral argument, Dardana also cited as supportive authority Restatement Third of Foreign Relations Law § 487 cmt. c (1987), which states that "[a]s in respect to judgments ... an action to enforce a foreign arbitral award requires jurisdiction over the award debtor or his property." Dardana's claim of property-based jurisdiction was not addressed in the district court.

▮▮▮ It is this Court's usual practice to allow the district court to address arguments in the first instance. *Farricielli v. Holbrook*, 215 F.3d 241, 246 (2d Cir.2000). Therefore, in the interests of sound judicial administration, we vacate the order of dismissal and remand the case to the district court for discovery, appropriate findings and conclusions of law on Dardana's claims of jurisdiction.

With regard to Dardana's claim of consent, we remand to the district court to allow the parties to supplement the record regarding the parties' intent and the applicable law. After discovery, the court should consider whether respondents contractually consented to jurisdiction in the district court to enforce the award.[11] In connection with Dardana's claim of jurisdiction under Rule 4(k)(2), we also remand for discovery on respondents' nationwide contacts and for consideration of whether asserting jurisdiction on that basis would comport with due process. In view of the remand on respondents' nationwide contacts, we believe that discovery should take place on respondents' New York contacts as well. We also remand for discovery on respondents' assets in this jurisdiction. The district court should consider the merits of Dardana's claim that the presence of property alone can supply the jurisdictional basis in an action to enforce arbitral awards under the Convention[12] or under state law.[13] Finally, with regard to YNG, we also remand for consideration of a narrower question—whether the decision

---

11. The parties submitted to us, pursuant to our request, letter briefs on the relevance of our prior decision in *Reed & Martin, Inc. v. Westinghouse Electric Corp.*, 439 F.2d 1268 (2d Cir.1971), on the issue of implied consent in this case. However, we decline to decide an issue that has been "briefed and argued only cursorily in this Court" and has not been addressed by the district court. See *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH v. Navimpex Centrala Navala (Seetransport I)*, 989 F.2d 572, 583 (2d Cir.1993) (internal quotation marks omitted)

12. According to Restatement Third of Foreign Relations Law § 487 reporter's note 7 (1987), "attachment and comparable provisional remedies for enforcement of a foreign arbitral award, if available in the enforcing state, are compatible with the Convention."

13. In *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH v. Navimpex Centrala*

*Navala (Seetransport II)*, 29 F.3d 79, 82 n. 4 (2d Cir.1994), this Court referred to the suggestion of Professor David Siegel that there may be situations where an arbitral award can be enforced under Article 53.

> The statute does not expressly require that the judgment be shown to be that of a court, although courts are referred to elsewhere in the article. There is room to include such equivalent tribunals as an arbitral panel and an administrative-type agency, if their determinations otherwise satisfy the criteria set forth in Article 53. It may be that the determination emerges from such a foreign tribunal with the same status there as a judicial judgment has, and without having to be converted into such a judgment. If that is so, it should not be indispensable that such a conversion occur before New York recognizes the determination.

N.Y. C.P.L.R. 5301 at 541 (McKinney 1997) (practice commentary).

of the Swedish court upholding the arbitral award against YNG is a judgment that can be recognized and enforced under Article 53.[14]   Cf. *Seetransport II*, 29 F.3d 79; *Lenchyshyn*, 281 A.D.2d 42, 723 N.Y.S.2d 285.   In view of our remand, we have no need to detail respondents' arguments in response to Dardana's claims, and we express no view on the merits.   We reserve decision on all issues in this case.[15]

For the foregoing reasons, we vacate the order of the district court and remand for further proceedings against both respondents consistent with this opinion.[16]   After the record in the district court has been supplemented and the court has made appropriate findings and conclusions of law, either party may restore jurisdiction to this Court by notifying the Clerk of the Court by letter, without the need for an additional notice of appeal.   See *United States v. Jacobson*, 15 F.3d 19, 21–23 (2d Cir.1994).   The returned appeal will be assigned to this panel, if practicable.

---

**14.**   See supra note 5.

**15.**   For example, Yukos also asks this Court to affirm the dismissal on the ground that it was not a party to the contract and thus cannot be subject to the arbitral award.   We decline to decide an issue the district court has not yet addressed.

**16.**   Dardana argued in this Court that the district court erred in dismissing sua sponte the petition against the non-appearing YNG.  On appeal, counsel for Yukos, appearing for YNG as well, agrees with Dardana that dismissal as to YNG was procedurally improper.